IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**FAYE COTTMAN**,
846 McAleer Court
Baltimore City, Maryland 21202

**DAMON GRAY,**
2029 Sunset Drive
Baltimore City, Maryland 21223

     and,

**AMBER SPENCER**,
7306 Clarity Court
Windsor Mill, Maryland 21244
Baltimore County

on behalf of themselves and those similarly
situated,

          Plaintiffs,

     v.

**BALTIMORE POLICE DEPARTMENT,**
601 E. Fayette Street
Baltimore, Maryland 21202

     *Serve on:*
     Lisa Walden, Esq., Chief of the Office of
     Legal Affairs for the Baltimore Police
     Department
     Office of Legal Affairs
     100 N. Holliday Street, Suite 101
     Baltimore, Maryland 21202

**CITY OF BALTIMORE**,

     *Serve on:*
     Jim Shea, City Solicitor
     Baltimore City Dept. of Law, City Hall
     100 N. Holliday Street, Suite 101
     Baltimore, Maryland 21202

**CLASS ACTION COMPLAINT
AND JURY DEMAND**

Civil Action No.

**BRANDON SCOTT,** Mayor of Baltimore, in his Official Capacity,

> *Serve on:*
> Jim Shea, City Solicitor
> Baltimore City Dept. of Law, City Hall
> 100 N. Holliday Street, Suite 101
> Baltimore, Maryland 21202

**MICHAEL S. HARRISON** (#T924), Commissioner, in his Individual and Official Capacity,

> *Serve on:*
> Baltimore Police Department
> c/o 601 E. Fayette Street
> Baltimore, Maryland 21202

**GARY TUGGLE** (#D736), former Interim Commissioner, in his Individual and Official Capacity,

> *Serve on:*
> Baltimore Police Department
> c/o 601 E. Fayette Street
> Baltimore, Maryland 21202

**DARRYL D. DE SOUSA** (#E403), former Commissioner, in his Individual and Official Capacity,

> *Serve on:*
> Baltimore Police Department
> c/o 601 E. Fayette Street
> Baltimore, Maryland 21202

**JEFFREY A. CONVERSE** (#H218), Detective, in his Individual and Official Capacity,

> *Serve on:*
> Baltimore Police Department
> c/o 601 E. Fayette Street
> Baltimore, Maryland 21202

**DESTINEE L. MACKLIN** (#J500),
Detective, in her Individual and Official
Capacity,

    *Serve on:*
    Baltimore Police Department
    c/o 601 E. Fayette Street
    Baltimore, Maryland 21202


**ANNMARIE DIPASQUALE** (#J754),
Detective, in her Individual and Official
Capacity,

    *Serve on:*
    Baltimore Police Department
    c/o 601 E. Fayette Street
    Baltimore, Maryland 21202

    and,

**BPD OFFICERS JOHN/JANE DOES 1 to 20**,
and **SUPERVISORY BPD OFFICERS
JOHN/JANE DOES 1 to 20**, in their Individual
and Official Capacities,

    *Serve on:*
    Baltimore Police Department
    c/o 601 E. Fayette Street
    Baltimore, Maryland 21202

        Defendants.

## CLASS ACTION COMPLAINT

Named Plaintiffs, by the undersigned attorneys Orrick, Herrington & Sutcliffe LLP and

the Lawyers' Committee for Civil Rights Under Law, bring this action on behalf of themselves

and all other similarly situated persons ("Class Members") against the Baltimore Police

Department ("BPD"); individual BPD officers and BPD supervisory officers known and

unknown; the City of Baltimore; the current Mayor of Baltimore City, Maryland; and former and current BPD Commissioners.  In support, Plaintiffs state as follows:

## INTRODUCTION

1.      This is a case about BPD's pattern and practice of unconstitutionally searching, seizing, and retaining the personal property of victims of violent crimes in Baltimore. This pattern and practice must end, which is why Plaintiffs bring this case.

2.      Plaintiff Damon Gray and the representative class members are victims of serious assaults that occurred in or around Baltimore City, Maryland between April 2018 and April 2021.  After they were assaulted, they also became the victims of BPD.

3.      When Plaintiff Gray and the representative class members were at their most vulnerable—having suffered significant injuries as victims of violent crime—BPD officers unlawfully seized and searched Plaintiffs' property without a warrant or consent.  More, without explanation, BPD has retained possession of Plaintiffs' property and either refused or ignored requests to return the property, causing injury, inconvenience, and humiliation to Plaintiffs.

4.      BPD is no stranger to violating the federal and state constitutional rights of the Baltimore residents it is required to protect and serve.  Significant violations have persisted across the administrations and tenures of multiple local elected officials and appointed law enforcement officials, indicating a culture of noncompliance that can only be remedied by court intervention.  Since at least the 1990s, when BPD leadership instituted what it called "zero tolerance" policies, police officers with minimal training, oversight, and accountability structures conducted a large number of stops, searches, and arrests— many improper and illegal— accompanied by frequent uses of force, causing frayed relationships between Baltimore residents and BPD.

5.      More recently, in April 2015, after Freddie Gray was fatally injured while in BPD custody, then-Baltimore Mayor Stephanie Rawlings-Blake asked the United States Department of Justice ("DOJ") to investigate BPD's policies and its long-standing history of aggressive, and abusive, unconstitutional policing tactics.

6.      In August 2016, the DOJ concluded its investigation and issued its report finding "reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law," and noting BPD's years long pattern and practice of conducting unreasonable searches and seizures.  (DOJ Civil Rights Division, *Investigation of the Baltimore City Police Department*, 3 (August 10, 2016) ("DOJ Report")).

7.      As a result of DOJ's investigation, on January 12, 2017, the United States District Court for the District of Maryland approved a Consent Decree between BPD and the United States, and subsequently appointed an independent monitor and a monitoring team to serve as agents of the court in overseeing the implementation of the Consent Decree.

8.      This action seeks redress for the deprivation of Class Members' rights guaranteed by the United States Constitution, directly resulting from the conduct of BPD officers acting in accord with BPD's pattern or practice of unlawfully searching and seizing the property of victims of serious assaults in violation of Plaintiffs' Fourth and Fourteenth Amendment rights guaranteed by the United States Constitution, and of which BPD knew or should have known.

9.      The Defendants—BPD, current BPD Commissioner Michael S. Harrison, and former BPD Commissioners Gary Tuggle and Darryl D. De Sousa; individual and supervisory BPD officers, known and unknown, including Detective Jeffrey A. Converse, Detective AnnMarie DiPasquale, Detective Destinee L. Macklin, Supervisory BPD Officers John/Jane Does 1 to 20, and BPD Officers John/Jane Does 1 to 20; the Mayor of Baltimore City  Brandon

Scott, and the City of Baltimore—are responsible for violating Plaintiffs' rights.

## JURISDICTION AND VENUE

10.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

11.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

12.     Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims in this Complaint occurred in the State of Maryland.

13.     This case was timely filed within three years from the date of the injuries incurred to all Plaintiffs.

## THE PARTIES

### A.     Named Plaintiffs

13.     Plaintiff **Damon Gray** is a 23-year-old Black man who resides in the City of Baltimore, Maryland.  On June 29, 2019, a stranger shot Mr. Gray approximately seven times in the back, neck, and chest while Mr. Gray was walking in and around Catherine Street in the southwest area of Baltimore.  Mr. Gray was transported by ambulance to the hospital where BPD officers seized without consent his cell phone, a bracelet, a necklace, and several articles of clothing.  These items remain in BPD custody.

14.     Plaintiff **Amber Spencer** is a 27-year-old Black woman who resides in the County of Baltimore, Maryland.  Just before midnight on March 20, 2020, a stranger shot Ms. Spencer in the head and chest while she was attending a cookout near 1800 North Chapel Street in Baltimore, Maryland.  After the shooting, Ms. Spencer was transported by ambulance to Johns Hopkins Hospital, where BPD officers seized her personal property without her consent, including her cell phone, jeans, shirt, shoes, car key, and approximately $400 in U.S. currency.

- 6 -

These items remain in BPD custody.

15.     Plaintiff **Faye Cottman** is a 36-year-old Black woman who resides in the City of Baltimore, Maryland.  On March 14, 2019, a woman that Ms. Cottman did not know shot Ms. Cottman and her then-11-year-old son in the head while he was playing with his brother at a playground in the Cherry Hill area of Baltimore, Maryland.  BPD officers arrived at the scene and seized Ms. Cottman's personal property without consent, including her jacket, cell phone, wig, and shoes.  Despite numerous unsuccessful attempts to reclaim her personal property from BPD, these items remain in BPD custody.

### B.     Defendants

### *Entities*

16.     Defendant **BPD** is the primary law enforcement agency whose jurisdiction covers Baltimore, Maryland.  At all times relevant in this Complaint, BPD is or was the employer of the police officers responsible for the seizure of Plaintiffs' property.  BPD, through its agents and employees, hired, supervised, and trained each of the identified and unidentified officers named in this Complaint.  BPD acted under color of law when it hired, supervised, and retained each identified and unidentified BPD Officer named in this Complaint.

17.     Defendant **City of Baltimore, Maryland ("Baltimore City")** is the local government that maintains BPD and employs BPD officers identified and unidentified, including Defendants Converse, Macklin, and DiPasquale.  BPD officers perform police functions typical of a municipal government police department.

### *Officials*

18.     Defendant **Michael S. Harrison** (Seq. No. T924) is the current BPD Commissioner.  Defendant Harrison became BPD Commissioner on or about March 12, 2019.

In his capacity as BPD Commissioner, Defendant Harrison acted under color of state law when he exercised policy-making authority for BPD; established policies and procedures for screening, hiring, training, monitoring, and supervising police officers; and enforced the duties, conduct, and discipline of police officers and other BPD employees.  Defendant Harrison acted as an agent and/or employee of BPD, as well as Baltimore City, and acted within the scope of his employment.  Defendant Harrison is being sued in his official capacity as the Commissioner of BPD and in his individual capacity.

19.    Defendant **Gary Tuggle** (Seq. No. D736) was Interim BPD Commissioner from May 2018 to March 2019.  In his capacity as Interim BPD Commissioner, Defendant Tuggle acted under color of state law when he exercised policy-making authority for BPD; established policies and procedures for screening, hiring, training, monitoring, and supervising officers; and enforced the duties, conduct, and discipline of officers and other BPD employees.  Defendant Tuggle acted as an agent and/or employee of BPD, as well as Baltimore City, and acted within the scope of his employment.  Defendant Tuggle is being sued for acts taken in his official capacity as the Interim Commissioner of BPD and in his individual capacity.

20.    Defendant **Darryl D. De Sousa** (Seq. No. E403) (together with **Michael S. Harrison** and **Gary Tuggle**, the **"BPD Commissioners"**) was BPD Commissioner from January 2018 to May 2018.  In his capacity as BPD Commissioner, Defendant De Sousa acted under color of state law when he exercised policy-making authority for BPD; established policies and procedures for screening, hiring, training, monitoring, and supervising officers; and enforced the duties, conduct, and discipline of officers and other BPD employees.  Defendant De Sousa acted as an agent and/or employee of BPD, as well as Baltimore City, and acted within the scope of his employment.  Defendant De Sousa is being sued for acts taken in his official capacity as the

Commissioner of BPD and in his individual capacity.

21.     Defendant **Mayor of the City of Baltimore Brandon Scott** is the current Mayor of Baltimore City who took office on December 8, 2020.  Defendant Scott is being sued in his official capacity for acts taken as the current Mayor of Baltimore City, Maryland and as the successor to official actions taken by past Mayors that are at issue in this case.

22.      Defendant **Detective Jeffrey A. Converse** (Seq. No. H218) is a police officer employed by BPD since February 19, 2002.  At all times relevant herein, Defendant Converse was acting under color of state law and in the course and scope of his employment as a police officer with BPD.  Defendant Converse is being sued in his official capacity for acts taken as a BPD officer and in his individual capacity.

23.     Defendant **Detective AnnMarie DiPasquale** (Seq. No. J754) is a police officer employed by BPD since at least January 22, 2017, and currently is assigned to the Southwestern District.  At all times relevant herein, Defendant DiPasquale was acting under color of state law and in the course and scope of her employment as a police officer with BPD.  Defendant DiPasquale is sued in her official capacity for acts taken as a BPD officer and in her individual capacity.

24.     Defendant **Detective Destinee L. Macklin** (Seq. No. J500) is a police officer employed by BPD since March 28, 2014.  At all times relevant herein, Defendant Macklin was acting under color of state law and in the course and scope of her employment as a police officer with BPD.  Defendant Macklin is sued in her official capacity for acts taken as a BPD officer and in her individual capacity.

25.     Defendants **BPD Officers John/Jane Does 1 to 20** (together with **Det. Jeffrey Converse, Det. Destinee Macklin, and Det. AnnMarie DiPasquale**, the **"Officer**

**Defendants"**) were or are police officers employed by BPD during the relevant time frame.  At all times relevant herein, Defendant BPD Officers John/Jane Does 1 to 20 were acting under color of state law and in the course and scope of their employment as police officers with BPD. Defendants BPD Officers Does 1 to 20 are sued in their official capacities for acts taken as BPD officers and in their individual capacities.

26.      Defendants **Supervisory BPD Officers John/Jane Does 1 to 20 ("Supervisory Defendants"** and collectively, with **BPD, Baltimore City, the BPD Commissioners, the Baltimore City Mayor,** and **the Officer Defendants**, the **"Defendants")** were or are supervisory police officers employed by BPD during the relevant time frame.  At all times relevant herein, Defendants Supervisory BPD Officers John/Jane Does 1 to 20 were acting under color of state law and in the course and scope of their employment as police officers with BPD. Supervisory Defendants are sued in their official capacities for acts taken as BPD officers and in their individual capacities.

## CLASS ALLEGATIONS

27.      Under Rules 23(a) and 23(b)(1) and (2) of the Federal Rules of Civil Procedure, Plaintiff Damon Gray brings this action on behalf of himself and other similarly situated residents of the City of Baltimore who were victims of serious assaults on or after April 1, 2018 and whose property BPD unlawfully seized without a warrant or consent (the "**Plaintiff Class**") pursuant to BPD Policies 703 and/or 1401.

28.      Plaintiff Amber Spencer also brings this action on behalf of herself and on behalf of a subclass of Plaintiffs who were victims of serious assault, whose property BPD unlawfully seized without a warrant or consent, and whose property BPD has not returned (the "**Continuing Seizure Subclass**") pursuant to BPD Policies 703 and/or 1401.

29.     Plaintiff Amber Spencer also brings this action on behalf of herself and on behalf of a subclass of Plaintiffs who were victims of serious assaults, whose U.S. currency BPD unlawfully seized, and whose U.S. currency BPD has not returned (the "**Currency Seizure Subclass**").

30.     Plaintiff Faye Cottman also brings this action on behalf of herself and on behalf of a subclass of Plaintiffs who were victims of serious assaults and whose cell phone contents BPD unlawfully searched pursuant to BPD Policies 703 and/or 1401 (the "**Illegal Phone Search Subclass**").

31.     The Plaintiff Class, Continuing Seizure Subclass, Currency Seizure Subclass, and Illegal Phone Search Subclass are so numerous that joinder of all the members would be impracticable.  Over 2,100 incidents classified as "shootings" have occurred in Baltimore since April 2018.  *See* BPD Part 1 Victim Based Crime Dataset, available at https://tinyurl.com/y57nt2yl.

32.     Because BPD's handling of property in these cases is dictated by BPD Policies 703 and 1401, based on information and belief, the victims of these serious assaults were subject to searches pursuant to these policies.  Indeed, Plaintiffs have received information indicating that this practice is widespread and at least one staff member of a Baltimore-area hospital has indicated that these practices are routine.

33.     As a direct result of the Defendants' customs, practices, and policies described herein of seizing and retaining the property of victims of serious assaults and, in the case of the Illegal Phone Search Subclass, searching crime victims' property without a warrant or consent, the members of the Plaintiff Class and the identified Subclasses were and continue to be deprived of their constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to the

United States Constitution.

34.     Defendants' failure to return the subject property to members of the Plaintiff Class constitutes a continuing and ongoing violation of the Plaintiff Class and Subclass Members' rights.

35.     Plaintiffs will fairly and adequately protect the interests of the Plaintiff Class. Plaintiffs Spencer and Cottman likewise will fairly and adequately protect the interests of the respective Subclasses.  Plaintiffs have no conflicts involving other Class Members or Defendants.  Plaintiffs understand their role as class representatives and their duties to the class in this litigation.  Plaintiffs are represented by competent and skilled counsel whose interests are fully aligned with the interests of the class.

36.     Questions of fact and law are common to the class.  These questions include:

> a.  Whether BPD's pattern and practice of seizing property without a warrant was constitutional.
>
> b.  For members of the Continuing Seizure Subclass and for members of the Currency Seizure Subclass, whether Defendants committed an ongoing violation of the rights of the members of the Plaintiff Class by failing to return their property.
>
> c.  For the members of the Illegal Phone Search Subclass, whether BPD's search of the members' cell phone without consent and/or probable cause constitutes a violation of the Subclass members' constitutional rights.

37.     Separation of the Plaintiff Class into individual actions creates a risk of "inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the class."  Fed. R. Civ. P.

23(b)(1)(A).

38.     The outcome of this action will affect individuals currently and subsequently subject to the search and seizure of their property while undergoing treatment for serious injuries sustained as victims of serious assaults.  The interests of these individuals are inadequately protected absent certification of the Plaintiff Class, as this case involves adjudication of those interests.  Fed. R. Civ. P. 23(b)(1)(A).

39.     Defendants here have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(1)(A).  BPD's actions taken with regard to the Plaintiff Class members' property and Plaintiff Subclass members' property were dictated by policy as part of a broader pattern and practice of unconstitutional conduct directed at victims of serious assaults as a class.

## FACTS

**A.      BPD unlawfully seized and searched Plaintiffs' personal property while Plaintiffs were at their most vulnerable after suffering severe injuries as innocent bystanders to and victims of violent crimes.**

### *Ms. Faye Cottman*

40.     On March 14, 2019, a stranger shot Ms. Faye Cottman and her then-11-year-old son at a playground in the Cherry Hill area of Baltimore, Maryland.  The shooter, a woman living across the street from the playground, approached Ms. Cottman's 11-year-old son, started a conversation with him, and then shot at the boy.  When Ms. Cottman saw the woman pointing a gun at her son, Ms. Cottman ran towards them.  As Ms. Cottman ran to protect her son, the shooter shot him in the head.  Ms. Cottman threw herself on top of her son and pleaded with the shooter not to kill them.  The shooter then pointed the gun at Ms. Cottman and pulled the trigger

twice, but the gun jammed.  On the third attempt, the shooter shot Ms. Cottman in the back of the head, then ran away.

41.     Both Ms. Cottman and her son suffered serious head injuries as a result of the shooting.  Ms. Cottman was briefly hospitalized, while her son was hospitalized for several weeks and is now disabled as a result of the attack.

42.     After the shooting, Ms. Cottman called her husband from the playground who arrived minutes later and immediately called emergency services.  BPD dispatched Defendant Macklin to the scene.  According to publicly available news reports about the shooting, BPD officers apprehended the shooter at the crime scene and took her into police custody.

43.     While Ms. Cottman was in a disoriented state and before she was treated for her injuries, Defendant Macklin seized Ms. Cottman's jacket, phone, wig, and shoes without consent.

44.     Defendant Macklin did not provide Ms. Cottman or her husband with any paperwork documenting the seizure of her personal property.  Defendant Macklin did not provide Ms. Cottman with any information about how to reclaim her property.

45.     After unlawfully seizing Ms. Cottman's cell phone, Defendant Macklin and/or BPD officers illegally searched Ms. Cottman's phone without Ms. Cottman's consent or a search warrant.

46.     Shortly after the shooting, on the same day, Defendant Macklin visited Ms. Cottman in the hospital to investigate the shooting.  At the time of Defendant Macklin's visit, Ms. Cottman was recovering from a procedure to remove the bullet from her head.  Defendant Macklin asked Ms. Cottman whether she knew the shooter, and Ms. Cottman said she did not.  In response, Defendant Macklin explained how she was able to search Ms. Cottman's cell phone

going back over a long period of time to see whether Ms. Cottman had any communications with the shooter.  Ms. Cottman reiterated that she had no prior relationship with the shooter and that she never saw her before in her life.  Ms. Cottman also asked Defendant Macklin about her cell phone, and Defendant Macklin stated that it was evidence.

47.    Based on publicly available records, on September 11, 2019, the Baltimore City Circuit Court (the "Circuit Court") found the shooter not criminally responsible for her conduct and ordered that she be committed to a psychiatric institution.  The Circuit Court closed the case that same day.  Despite the case resolution, neither Defendant Macklin nor BPD contacted Ms. Cottman to inform her of the case disposition, or how to reclaim her property.

48.    On May 6, 2020, Defendant Macklin was contacted regarding Ms. Cottman's property.  Defendant Macklin said she remembered Ms. Cottman's case and that she could release Ms. Cottman's property because the case had reached a disposition.  Defendant Macklin proposed meeting Ms. Cottman in person to return the seized items but claimed that she first needed her sergeant's permission due to the COVID-19 pandemic.  Detective Macklin asked for a follow-up call one week later to confirm plans to return Ms. Cottman's property.  Subsequent attempts to contact Detective Macklin were unsuccessful.  Ms. Cottman's property remains in BPD custody.

### Ms. Amber Spencer

49.    On March 20, 2020, a stranger shot Ms. Amber Spencer in the head and chest while celebrating her boyfriend's birthday at a cookout near the 1800 block of North Chapel Street in Baltimore City, Maryland.  After the shooting, Ms. Spencer was transported by ambulance to Johns Hopkins Hospital, also in Baltimore City, Maryland.

50.     Defendant Converse visited Ms. Spencer at the hospital shortly after the shooting occurred.  While at the hospital, Defendant Converse seized Ms. Spencer's cell phone, jeans, shirt, shoes, and approximately $400 in U.S. currency without her consent or a warrant.  BPD also seized the key to Ms. Spencer's car.  These items remain in BPD custody.

51.     Defendant Converse did not provide Ms. Spencer with a police report or any paperwork documenting the seizure.  Ms. Spencer asked Defendant Converse how to reclaim the seized property.  In response, Defendant Converse told Ms. Spencer she would have to retrieve her property from BPD at the police station but would not be able to do so immediately because of the COVID-19-related restrictions.

52.     Ms. Spencer communicated with Defendant Converse after Ms. Spencer's property was seized, including once in or around mid-April 2020 and again in or around June 2020.  Each time, Defendant Converse stated to Ms. Spencer that he was unable to return her property and said that she could retrieve her property when the state of Maryland and Baltimore City entered "phase 3" of COVID-19 reopening.  Ms. Spencer's property remains in BPD custody.

### Mr. Damon Gray

53.     On June 29, 2019, a stranger shot Mr. Gray approximately seven times in the back, neck, and chest while Mr. Gray was walking on or around Catherine Street in the southwest area of Baltimore, Maryland.  The attack rendered Mr. Gray severely disabled, forcing him to undergo seven months of extensive treatment and rehabilitation both in the hospital and at a rehabilitation facility.  More than a year later Mr. Gray continues to undergo intensive physical therapy three times a week.

54. After the shooting, a disoriented Mr. Gray was transported by ambulance to the hospital. While at the hospital, Defendant DiPasquale seized Mr. Gray's cell phone, a bracelet, a necklace, and several articles of clothing without first obtaining a warrant or Mr. Gray's consent.

55. Defendant DiPasquale did not provide Mr. Gray with documentation of the seizure or any information about how to reclaim his personal property. Mr. Gray's property remains in BPD's custody.

     **B.**      **BPD's relevant search and seizure policies are unconstitutional.**

     1.     ***BPD Policy 1401 is unconstitutional as written and as applied***

56. BPD policy 1401, *Control of Property and Evidence*, dated March 19, 2018, ("BPD Policy 1401") is a 34-page policy document implemented by order of the BPD Commissioner that applies to all BPD officers and employees. (BPD Policy 1401 at 18). BPD Policy 1401 governs the seizure, control, and disposition of Plaintiffs' property. Though the U.S. Constitution permits only reasonable searches and seizures of property and provides standards by which that is to be assessed, BPD Policy 1401 lacks any reasonableness requirements or any other constitutional standards. BPD Policy 1401 fails to define what constitutes a reasonable search and seizure or "evidentiary value." In fact, BPD Policy 1401—as written and as applied—violates the constitutional reasonableness requirement.

57. BPD Policy 1401 on its face distinguishes between "evidentiary" and "non-evidentiary" property but fails to define this distinction. (BPD Policy 1401 at 5, mandating only that "evidentiary property" be held until completion of the case; and BPD Policy 1401 at 6, instructing that "[n]on-evidentiary property belonging to a victim shall be returned").

58. Plaintiffs asked BPD to return their property, including certain articles of clothing, cell phones, currency, car and house keys, a wristwatch, and a wallet. Instead of returning Plaintiffs' property or attempting to determine what property had "evidentiary value"

and what property was non-evidentiary, BPD simply retained Plaintiffs' property.  Indeed, in at least one instance involving Plaintiff Cottman's property, Defendant Macklin acknowledged that the property should be released because the underlying case had reached a disposition, however Defendant Macklin stated that she was unable to effect the return until she cleared it with her sergeant.  Plaintiff Cottman's property remains in BPD custody.

59.     BPD's nonconsensual and warrantless searches, its indiscriminate seizure of property, and its refusal to return Plaintiffs' property demonstrates its failure to apply a reasonableness standard to its searches and seizures.

60.     BPD seized approximately $400 in U.S. currency from Ms. Spencer.  BPD policy 1401 requires BPD officers and employees immediately to return currency taken from a victim. (*See* BPD Policy 1401 at 9).  There is no evidence connecting Ms. Spencer's money to any crime.  There is no apparent constitutional basis for its seizure.  The sole basis appears to be BPD's unconstitutional authorization.

61.     BPD also has failed to afford Plaintiffs notice of the seizure of their property and an opportunity to be heard on the question of whether the return of that property is appropriate. Though BPD Policy 1401 requires that victims be notified within 90 days when BPD seizes non-evidentiary property from a crime victim, Plaintiffs never received such notification. (*See* BPD Policy 1401 at 5-6).  BPD Policy 1401 also requires BPD to document all submissions of property to the BPD Evidence Control Unit via a Property Receipt incorporated in BPD Form 56. (*See* BPD Policy 1401 at 7).  Plaintiffs have not received copies of Form 56.

62.     BPD Form 56 provides that, upon written request for the return of seized property, BPD will make a determination regarding the return of the property made within 60

days. (*See* BPD Policy 1401 at 19).  Despite requesting the return of seized property in writing,

BPD has not provided Plaintiffs with any determination regarding the return of their property.

2.      ***BPD Policy 703 is unconstitutional as written and as applied***

63.      BPD Policy 703, *Death and Serious Assault Investigations*, dated September 13,

2017, ("BPD Policy 703") is a six-page policy document implemented by order of the Police

Commissioner that applies to all BPD officers and employees and governs the seizure, control,

and disposition of Plaintiffs' property.  (*See* BPD Policy 703 at 6).

64.      BPD Policy 703 requires BPD officers accompanying a victim to the hospital to

"[t]ake possession of the clothing of the victim and all available evidence." (BPD Policy 703 at

4).  Though BPD Policy 703 uses the word "evidence," it does not require any probable cause or

reasonableness determination prior to the seizure of a victim's property and makes no

meaningful distinction between property with evidentiary value and property without it.  In

practice, BPD officers who accompany a victim to the hospital search and seize the victim's

clothing and all available *property*.  BPD officers conducting these blanket searches and seizures

unreasonably took Plaintiffs' non-evidentiary property.

65.      These unreasonable searches and seizures are conducted with the authority and

under the supervision of BPD's Homicide Section, Criminal Investigations Bureau (CIB), the

Citywide Shooting Unit (CWS), and the District Detective Unit (DDU), CIB.  (*See* BPD Policy

703 at 1-2).  These unreasonable searches and seizures also are conducted under the supervision

of BPD Sector Supervisors and Shift Commanders. (*See* BPD Policy 703 at 4).

C.      **BPD's customs, practices, or usages of searching and seizing
         Plaintiffs' property is unconstitutional.**

66.      As described above, BPD and the Officer Defendants by custom or practice failed

to exercise proper judgment to determine whether searches and seizures of crime victims'

- 19 -

property are reasonable.  Instead, BPD's widespread custom and practice is to seize all available property from victims of serious assaults and categorize it as "evidence" regardless of the reasonableness of the seizure and/or search.

67.     BPD's custom or practice of engaging in blanket seizures and categorical characterizations of property seized from crime victims violates Plaintiffs' right to be free of unreasonable searches and seizures and the recovery of property whether or not it was properly seized initially.

68.     This improper conduct has been sanctioned expressly and implicitly by BPD, the BPD Commissioners, and the Baltimore Mayor.  It has occurred enough times that BPD, BPD Commissioners, and the Baltimore City Mayor knew or should have known of this custom, practice, or usage.

### D.     BPD's failure to adequately train, supervise, and discipline its members is an unconstitutional custom, practice, or usage.

69.     BPD has an obligation to train, supervise, and discipline its officers/employees to ensure that those officers/employees conduct lawful searches and seizures.  BPD assured a court in this District that it would adequately train its officers to conduct lawful searches and seizures. BPD assured a court in this District that it would ensure that a supervising officer reviews all documentation and records relating to searches and seizures for completeness and adherence to the law and BPD policy.  BPD assured a court in this District that it would audit the supervisory reviews of documentation and records relating to searches and seizures.

70.     Despite these assurances, and despite the fact that Baltimore City,  the Baltimore City Mayor, BPD, the BPD Commissioners, and the Supervisory Defendants knew or should have known that BPD implemented unconstitutional policies of searching and seizing crime victims' property, Baltimore City, the Baltimore City Mayor, BPD, the BPD Commissioners,

and the Supervisory Defendants failed to correct the policies and adequately train BPD officers and employees.

71.     Despite BPD's written assurances and despite the fact that Baltimore City,  the Baltimore City Mayor, BPD, the BPD Commissioners, and the Supervisory Defendants knew or should have known that BPD officers and employees were engaged in unconstitutional policies, practices, customs, or usages of searching—and seizing property of—crime victims, Defendants failed to adequately train, supervise, or discipline BPD officers/employees who were so engaged.

72.     Baltimore City, the Baltimore City Mayors, BPD, the BPD Commissioners, and the Supervisory Defendants likewise knew or should have known that the training provided to BPD officers and employees was so inadequate that it would lead to further violations of members of the Plaintiff Classes' civil rights.  Their failure to provide adequate training in the face of the ongoing nature of these violations demonstrates their deliberate indifference to the harm done to members of the Plaintiff Classes.

73.     These failures show that BPD does not ensure that supervising officers review all documentation and records relating to searches and seizures for completeness and adherence to the law and BPD policy.  Such failures also show that, on information and belief, BPD has not audited the documentation and record-keeping procedures relating to searches and seizures that require periodic supervisory review.

> **E.**     **BPD's continued unconstitutional customs, practices, or usages affected Plaintiffs.**

74.     BPD's constitutional violations continue because BPD has not returned Plaintiffs' property.  Due to Defendants' continued unlawful seizure of Plaintiff's property, Plaintiffs have had to replace their seized property at their own personal expense.

75.     Based on information and belief, BPD also continues to engage in the conduct alleged in this Complaint.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
*Facial Challenge to BPD Policies 703 and 1401 under 42 U.S.C. § 1983 and the
Fourth and Fourteenth Amendments to the U.S. Constitution*

76.     Plaintiffs incorporate paragraphs 1 through 75 as if they were fully stated herein.

77.     Plaintiffs on behalf of themselves and all Plaintiff Class Members and Subclass Members bring this claim against Baltimore City, BPD, the Baltimore City Mayor, in their official capacity, and, the BPD Commissioners, in their official and individual capacities.

78.     Defendants Baltimore City, BPD, the Baltimore City Mayor (and his predecessors), and the BPD Commissioners performed acts that deprived Plaintiffs of their Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures of their property.

79.     Defendants Converse, DiPasquale, and Macklin intentionally searched and seized Plaintiffs' property pursuant to and under the authority of BPD Policies 703 and 1401.

80.     The search and seizures were unreasonable.

81.     The search and seizures were conducted without a search warrant.

82.     The search and seizures were conducted without Plaintiffs' consent.

83.     BPD continues to retain possession of Plaintiff Spencer's and the Continuing Seizure Subclass Members' property pursuant to and under the authority of BPD Policies 703 and 1401.

84.     BPD Policies 703 and 1401 fail to distinguish between personal property and property seized as evidence of an underlying crime.

85.     At the time of the unreasonable search and seizures, the BPD Commissioners encouraged or directly participated in the unreasonable search and seizures by officially authorizing, approving, or knowingly going along with BPD Policies 703 and 1401.

86.     Defendant BPD implemented Policies 703 and 1401.

87.     At the time of the unreasonable search and seizures, the Baltimore City Mayor authorized the policies, ordinances, regulations, decisions, or customs of Baltimore City and BPD that permitted the unreasonable search and seizures.

88.     At the time of the unreasonable search, the Baltimore City Mayor was an official whose acts constitute final official policy of Baltimore City.

89.     At the time of the unreasonable search, Baltimore City authorized the actions that form the basis of Plaintiffs' claims.

90.     BPD Policies 703 and 1401 caused the deprivation of the Plaintiffs' rights by the Officer Defendants; that is, BPD Policies 703 and 1401 authorized the Officer Defendants to seize property from victims of serious assaults without regard to the evidentiary characteristics or lack thereof of the property being seized thereby depriving Plaintiffs' of their civil rights.

91.     This deprivation of rights caused Plaintiffs harm, including lost wages due to lost time at work, the lost value of the property unlawfully seized, emotional distress, personal humiliation, and the deprivation of the use of the property unreasonably taken.

### SECOND CAUSE OF ACTION
*Challenging the Unreasonable Search of Plaintiff Cottman's*
*and the Illegal Phone Search Subclass's Phones Under 42 U.S.C. § 1983*
*and the Fourth and Fourteenth Amendments to the U.S. Constitution*

92.     Plaintiffs incorporate paragraphs 1 through 75 as if they were fully stated herein.

93.     Plaintiff Cottman on behalf of herself and the Illegal Phone Search Subclass Members bring this claim against the following defendants in their official and individual capacities: the BPD Commissioners, the Officer Defendants, and the Supervisory Defendants.

94.     Defendants the BPD Commissioners, the Officer Defendants, and the Supervisory Defendants performed acts that deprived Plaintiff Cottman and the Illegal Phone Search Subclass Members of their Fourth and Fourteenth Amendment rights to be free from unreasonable searches of their property.

95.     Defendant Macklin intentionally searched the contents of Plaintiff Cottman's phone pursuant to and under the authority of BPD Policies 703 and 1401.

96.     The search was unreasonable.

97.     The search was conducted without a search warrant.

98.     The search was conducted without consent.

99.     At the time of the unreasonable search and seizures, the BPD Commissioners encouraged or directly participated in the unreasonable search and seizures by officially authorizing, approving, or knowingly going along with the BPD Policies 703 and 1401.

100.    Defendant Macklin and the Officer Defendants conducted such searches under the supervision and oversight of the BPD Commissioners, who implemented, followed, or failed to remedy customs, practices, or usages of conducting such searches.

101.    At the time of these searches, Defendants acted under color of law as BPD officials and officials of the City of Baltimore.

102.    By unlawfully searching Plaintiff Cottman's and the Illegal Phone Search Subclass's phones without consent or first obtaining a lawfully issued search warrant,

Defendants violated Plaintiff Cottman's and the Illegal Phone Search Subclasses' right to be secure in their persons and property from unreasonable searches.

103.    As a proximate and foreseeable result of Defendants' violations, Plaintiff Cottman and the Illegal Phone Search Subclass Members have suffered, are suffering, and will continue to suffer injuries including emotional distress and personal humiliation.

### THIRD CAUSE OF ACTION
*Challenging the Unreasonable Seizure of Plaintiffs' Property*
*Under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution*

104.    Plaintiff(s) incorporate paragraphs 1 through 75 as if they were fully stated herein.

105.    Plaintiffs on behalf of themselves and all Plaintiff Class Members and Subclass Members bring this claim against the following defendants in their individual and official capacities: the BPD Commissioners, the Officer Defendants, and the Supervisory Defendants.

106.    Defendants the BPD Commissioners, the Officer Defendants, and the Supervisory Defendants performed acts that deprived Plaintiffs of their Fourth and Fourteenth Amendment rights to be free from unreasonable seizures of their property.

107.    Defendants Converse, DiPasquale, and Macklin intentionally seized Plaintiffs' property.

108.    The seizures were unreasonable.

109.    The seizures were made without a search warrant.

110.    The seizures were not pursuant to Plaintiffs' arrest.

111.    The seizures were made without Plaintiffs' consent.

112.    At the time of the unreasonable search and seizures, the BPD Commissioners encouraged or directly participated in the unreasonable search and seizures by officially authorizing, approving, or knowingly going along with BPD Policies 703 and 1401.

113.    Defendants Converse, DiPasquale, and Macklin and the other Officer Defendants made such seizures under the supervision and oversight of the BPD Commissioners, who implemented followed, or failed to remedy customs, practices, or usages of making such seizures.

114.    At the time of these seizures, Defendants acted under color of law as BPD officials and officials of the City of Baltimore.

115.    As a proximate and foreseeable result of Defendants' violations of Plaintiffs' Fourth and Fourteenth Amendment rights, Plaintiffs have suffered, are suffering, and will continue to suffer injuries including the loss of the use and enjoyment of their property, the loss of the property itself, emotional distress, personal humiliation, and any costs in connection with replacing their seized property at personal expense.

## FOURTH CAUSE OF ACTION
*Challenging BPD's Custom, Practice, or Usage of Conducting Unreasonable Searches and Seizures of Crime Victims' Property Under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution*

116.    Plaintiff(s) incorporate paragraphs 1 through 75 as if they were fully stated herein.

117.    Plaintiffs on behalf of themselves and all Plaintiff Class Members and Subclass Members bring this claim against Baltimore City, BPD, the Baltimore City Mayor in his official capacity, and the BPD Commissioners, in their individual and official capacities.

118.    Defendants Baltimore City, BPD, the Baltimore City Mayor (and predecessors), and the BPD Commissioners, in their individual and official capacities, performed acts that deprived Plaintiffs of their Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures of their property.

119.     The practice of conducting unreasonable searches and seizures was, at the time Plaintiffs were deprived of their rights, a longstanding, widespread, or well-settled custom that constituted a standard operating procedure of BPD.

120.     Defendants were, at the time of the unreasonable search and seizures, officials of the City of Baltimore.

121.     Defendants Converse, DiPasquale, and Macklin intentionally searched and seized Plaintiffs property pursuant to this custom, practice, or usage.

122.     The search and seizures were unreasonable.

123.     The search and seizures were conducted without a search warrant.

124.     The search and seizures were conducted without Plaintiffs' consent.

125.     At the time of the unreasonable search and seizures, the BPD Commissioners encouraged or directly participated in the unreasonable search by officially authorizing, approving, or knowingly going along with the unconstitutional custom, practice, or usage of the individual police officers who conducted the unreasonable search and seizures.

126.     The BPD Commissioners condoned unconstitutional customs, practices, and usages, or knowingly refused to terminate the ongoing series of unreasonable search and seizures conducted by BPD officers.

127.     At the time of the unreasonable search and seizure, the Baltimore City Mayor authorized or condoned the customs, practices, or usages of Baltimore City and BPD that caused the unreasonable search and seizures.

128.     At the time of the unreasonable search and seizures, the Baltimore City Mayor was an official whose acts constitute final official policy of Defendant Baltimore City.

129.     At the time of the unreasonable search and seizures, Baltimore City authorized the actions that are the basis of Plaintiffs' claims.

130.     Defendants' widespread and/or longstanding practice, custom, or usage caused the deprivation of the Plaintiffs' rights by the Officer Defendants; that is, BPD's widespread or longstanding practice or custom caused the deprivation of Plaintiffs' constitutional rights.

131.     This deprivation of rights caused Plaintiffs harm, including lost wages due to lost working time, the lost value of the property unlawfully seized, emotional distress, personal humiliation, and the deprivation of the use of the property unreasonably taken.

### FIFTH CAUSE OF ACTION
*Challenging BPD's Failure to Train on the Proper Conduct of Searches and Seizures Under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution*

132.     Plaintiff(s) incorporate paragraphs 1 through 75 as if they were fully stated herein.

133.     Plaintiffs bring this claim on behalf of themselves and all Plaintiff Class Members and Subclass Members against Baltimore City, BPD, the Baltimore City Mayor, in his official capacity, and in their individual and official capacities, the BPD Commissioners, and the Supervisory Defendants, in their individual and official capacities.

134.     Defendants Baltimore City, BPD, the Baltimore City Mayor (including his predecessors), the BPD Commissioners, and the Supervisory Defendants performed acts that deprived Plaintiffs of their Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures of their property.

135.     Defendants BPD, Baltimore City, the Baltimore City Mayor, and the BPD Commissioners' training program was inadequate to train its officers and employees to carry out their duties in this respect.

136.     Supervisory Defendants failed to conduct sufficient training to ensure that its officers and employees refrain from conducting unreasonable searches and seizures.

137.    Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants knew that BPD officers and employees would confront situations in which they needed to assess the evidentiary value of crime victims' property for purposes of conducting lawful searches and seizures.

138.    BPD officers have a long history of mishandling searches and seizures.

139.    Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants knew that BPD officers who wrongly decided to search and/or seize a crime victims' property would frequently cause a deprivation of crime victims' Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures.

140.    Despite this knowledge, Defendants Baltimore City, BPD, the Baltimore City Mayors, and the Supervisory Defendants were deliberately indifferent to the need for more or different training.

141.    Without proper training, Defendants Converse, DiPasquale, and Macklin intentionally searched and seized Plaintiffs' property.

142.    The search and seizures were unreasonable.

143.    The search and seizures were conducted without a search warrant.

144.    The search and seizures were conducted without Plaintiffs' consent.

145.    Defendants' failure to properly train BPD officers and employees caused the deprivation of the Plaintiffs' rights by the Officer Defendants; that is, Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants' failure to properly train BPD officers and employees caused the deprivation of Plaintiffs' rights.

146.     This deprivation of rights caused Plaintiffs harm, including lost wages due to lost working time, the lost value of the property unlawfully seized, emotional distress, personal humiliation, and the deprivation of the use of the property unreasonably taken.

**SIXTH CAUSE OF ACTION**
*Challenging BPD's Failure to Supervise the Conduct of Searches and Seizures*
*Under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution*

147.     Plaintiff(s) incorporate paragraphs 1 through 75 as if they were fully stated herein.

148.     Plaintiffs on behalf of themselves and all Plaintiff Class Members and Subclass Members bring this claim against Baltimore City, BPD, the Baltimore City Mayor and in their individual and official capacities, the BPD Commissioners, and the Supervisory Defendants.

149.     Defendants Baltimore City, BPD, the Baltimore City Mayor (including his predecessors), the BPD Commissioners, and the Supervisory Defendants performed acts that deprived Plaintiffs of their Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures.

150.     Defendants Baltimore City, BPD, the Baltimore City Mayors, and the BPD Commissioners' program of supervision was inadequate to ensure that BPD officers and employees were adequately trained to carry out their duties in this respect.

151.     The Supervisory Defendants failed to supervise BPD officers and employees to refrain from conducting unreasonable searches and seizures.

152.     Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants knew that BPD officers and employees would confront situations in which they needed to assess the evidentiary value of crime victims' property for purposes of conducting lawful searches and seizures.

153.     BPD officers have a long history of mishandling searches and seizures.

154.     Defendants Baltimore City, the BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants knew that BPD officers who wrongly decided to search and/or seize a crime victims' property would frequently cause a deprivation of crime victims' Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures.

155.     Despite this knowledge, Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants were deliberately indifferent to the need to adequately supervise BPD officers and employees responsible for evaluating the evidentiary value of seized property.

156.     Defendants Converse, DiPasquale, and Macklin without adequate training, intentionally searched and seized Plaintiffs' property.

157.     The search and seizures were unreasonable.

158.     The search and seizures were conducted without a search warrant.

159.     The search and seizures were conducted without Plaintiffs' consent.

160.     Defendants' failure to adequately supervise BPD officers and employees caused the deprivation of the Plaintiffs' rights by the Officer Defendants; that is, Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants' failure to adequately supervise BPD officers and employees caused the deprivation of Plaintiffs' rights.

161.     This deprivation of rights caused Plaintiffs harm, including lost wages due to lost working time, the lost value of the property unlawfully seized, emotional distress, personal humiliation, and the deprivation of the use of the property unreasonably taken.

## SEVENTH CAUSE OF ACTION

*Challenging Defendants' Custom, Practice, or Usage of Failing to Provide Plaintiffs Adequate Notice and Opportunity to be Heard Under of 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the U.S. Constitution*

162. Plaintiffs incorporate paragraphs 1 through 75 as if they were fully stated herein.

163. Plaintiff Spencer on behalf of herself and all Continuing Seizure Subclass and Currency Seizure Subclass Members bring this claim against Baltimore City, BPD, the Baltimore City Mayor, in his official capacity, and in their individual and official capacities, the BPD Commissioners.

164. Defendants Baltimore City, BPD, the Baltimore City Mayor (including his predecessors), and the BPD Commissioners performed acts that deprived Plaintiffs of their Fifth and Fourteenth Amendment rights to be free from deprivation of property without due process of law.

165. Defendants Baltimore City and BPD have implemented procedures that purport to protect crime victims from the mistaken or unjustified deprivation of property.

166. Plaintiffs have attempted to avail themselves of these procedures.

167. Defendants have denied Plaintiffs all meaningful access to the protection of rights these procedures purport to provide.

168. The practice of denying victims of serious assaults adequate notice and opportunity to seek the return of seized property was, at the time Plaintiffs were deprived of their rights, a longstanding, widespread, or well-settled custom that constituted a standard operating procedure of BPD.

169. Defendants were, at the time of the due process violations, officials of the City of Baltimore.

170.     At the time of the due process violations, the BPD Commissioners encouraged or directly participated in the violations by officially authorizing, approving, or knowingly going along with the unconstitutional custom, practice, or usage of the individual police officers who conducted the unreasonable search and seizures.

171.     The BPD Commissioners condoned unconstitutional customs, practices, and usages, or knowingly refused to terminate the ongoing series of due process violations by BPD officers.

172.     The Baltimore City Mayor authorized or condoned the customs, practices, or usages of Baltimore City and BPD that permitted the violations.

173.     At the time of the due process violations, the Baltimore City Mayor was an official whose acts constitute final official policy of Baltimore City.

174.     At the time of the due process violations, Baltimore City authorized the actions that are the basis of Plaintiffs' claims.

175.     Defendants' widespread or longstanding practice, custom, or usage caused the deprivation of the Plaintiffs' rights by the Officer Defendants; that is, BPD's widespread or longstanding practice or custom caused the deprivation of Plaintiffs' rights.

176.     This deprivation of rights caused Plaintiffs harm, including lost working time, the lost value of the property unlawfully seized, emotional distress, personal humiliation, and the deprivation of the use of the property unreasonably taken.

### EIGHTH CAUSE OF ACTION
*Challenging BPD's Failure to Train to Provide Adequate
Notice and Opportunity to be Heard Under of 42 U.S.C. § 1983 and the
Fifth and Fourteenth Amendments to the U.S. Constitution*

177.     Plaintiff(s) incorporate paragraphs 1 through 75 as if they were fully stated herein.

178.     Plaintiff and Spencer on behalf of herself and all Continuing Seizure Subclass and Currency Seizure Subclass Members bring this claim against Baltimore City, BPD, the Baltimore City Mayor, in his official capacity, and in their individual and official capacities, the BPD Commissioners, and the Supervisory Defendants.

179.     Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants performed acts that deprived Plaintiffs of their Fifth and Fourteenth Amendment procedural due process rights to be free from deprivation of property without notice and opportunity to be heard.

180.     Defendants Baltimore City, BPD, the Baltimore City Mayors, and the BPD Commissioners' training program was inadequate to train its officers and employees to carry out their duties in this respect.

181.     The Supervisory Defendants failed to conduct sufficient training to ensure that its officers and employees refrain from depriving violent crime victims of their right to notice and an opportunity to be heard.

182.     Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants knew that BPD officers and employees would confront situations in which they would be responsible for ensuring that crime victims received procedural due process rights.

183.     BPD officers have a long history of due process violations.

184.     Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants knew that the wrong choice by BPD officers faced with choices about crime victims' rights to notice and an opportunity to be heard would

frequently cause a deprivation of crime victims' Fifth Amendment and Fourteenth due process rights.

185.    Despite this knowledge, Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants were deliberately indifferent to the need for more or different training.

186.    Defendants Converse, DiPasquale, and Macklin without proper training, failed to provide notice and an opportunity for Plaintiffs' to seek the return of their property.

187.    Defendants' failure to properly train BPD officers and employees caused the deprivation of the Plaintiffs' rights by the Officer Defendants; that is, Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants' failure to properly train BPD members caused the deprivation of Plaintiffs' rights.

188.    This deprivation of rights caused Plaintiffs harm, including lost wages due to lost working time, the lost value of the property unlawfully seized, emotional distress, personal humiliation, and the deprivation of the use of the property unreasonably taken.

## NINTH CAUSE OF ACTION
*Challenging BPD's Failure to Supervise the Provision of Adequate
Notice and Opportunity to be Heard Under of 42 U.S.C. § 1983 and the
Fifth and Fourteenth Amendments to the U.S. Constitution*

189.    Plaintiff(s) incorporate paragraphs 1 through 75 as if they were fully stated herein.

190.    Plaintiff and Spencer on behalf of herself and all Continuing Seizure Subclass and Currency Seizure Subclass Members bring this claim against Baltimore City, BPD, the Baltimore City Mayor, and in their individual and official capacities, the BPD Commissioners and the Supervisory Defendants.

191.    Defendants Baltimore City, BPD, the Baltimore City Mayor (including his predecessors), the BPD Commissioners, and the Supervisory Defendants performed acts that

deprived Plaintiffs of their Fifth and Fourteenth Amendment procedural due process rights to be free from deprivation of property without notice and opportunity to be heard.

192. Defendants Baltimore City, BPD, the Baltimore City Mayor, and the BPD Commissioners' program of supervision was inadequate to ensure that its officers and employees properly carried out their duties in this respect.

193. The Supervisory Defendants failed to exercise supervision to ensure that BPD officers and employees refrained from depriving violent crime victims of their right to notice and an opportunity to be heard.

194. Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants knew that BPD officers and employees would confront situations in which they would be responsible for ensuring that crime victims received procedural due process rights.

195. BPD officers have a long history of due process violations.

196. Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants knew that BPD officers who wrongly decided to search and/or seize a crime victims' property would frequently cause a deprivation of crime victims' Fifth and Fourteenth Amendment due process rights.

197. Despite this knowledge, Defendants Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants were deliberately indifferent to the need for close supervision.

198. Defendants Converse, DiPasquale, and Macklin without proper training, failed to provide notice and an opportunity for Plaintiffs' to seek the return of their property.

199.    Defendants' failure to adequately supervise BPD officers and employees caused the deprivation of the Plaintiffs' rights by the Officer Defendants; that is, Baltimore City, BPD, the Baltimore City Mayor, the BPD Commissioners, and the Supervisory Defendants' failure to adequately supervise BPD officers and employees caused the deprivation of Plaintiffs' rights.

200.    This deprivation of rights caused Plaintiffs harm, including lost wages due to lost working time, the lost value of the property unlawfully seized, emotional distress, personal humiliation, and the deprivation of the use of the property unreasonably taken.

## JURY DEMAND

201.    Plaintiffs demand a jury trial on all such triable issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

a.    Declare that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure Rule 23 and certify the class with the named Plaintiffs as the class representatives and with current counsel as class counsel;

b.    Declare that Defendants' acts, taken in their official capacities, as alleged above violate the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution;

c.    Declare that Defendants' acts, taken in their individual capacities, as alleged above violate the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution;

d.    Declare that BPD Policies 703 and 1401 are unconstitutional on their face, pursuant to the Fourth and Fourteenth Amendments to the U.S. Constitution;

e.    Declare that BPD Policies 703 and 1401 are unconstitutional as applied, pursuant to the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution;

f.    Permanently enjoin Defendants from pursuing the course of conduct complained of herein;

g.      Enjoin Defendants from engaging in unconstitutional and illegal practices in their official capacities abridging the civil rights of Plaintiffs and others;

h.      Enjoin Defendants from engaging in unconstitutional and illegal practices in their individual capacities abridging the civil rights of Plaintiffs and others;

i.      Order Defendants, BPD officers, agents, and employees to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein;

j.      Order BPD to adopt and implement a policy that adequately defines and distinguishes between evidence and non-evidentiary property;

k.      Order BPD to adopt and implement a procedure that adequately defines the process for collecting an individual's personal property for evidentiary purposes and the process for the return of said property;

l.      Order BPD to adequately train officers on the abovementioned evidentiary policy and procedure;

m.      Order BPD to return any and all Plaintiffs' property that remains in BPD's possession and does not actually serve an investigatory purpose as defined by the aforementioned policy;

n.      Award the individual Plaintiffs compensatory and consequential damages against Defendants BPD, and Baltimore City in an amount to be determined by a jury;

o.      Award the individual Plaintiffs compensatory and consequential damages against the Defendants in their individual capacities in an amount to be determined by a jury;

p.      Award the individual Plaintiffs compensatory and consequential damages against the Defendants in their official capacities in amount to be determined by a jury;

q.      Award the individual Plaintiffs punitive damages against the BPD

Commissioners, the Officer Defendants, and against the Supervisory Defendants in an amount to

be determined by a jury;

r.      Award the individual Plaintiffs attorneys' fees and costs incurred in bringing this

action pursuant to 42 U.S.C. §§ 1983, 1988; and

s.      Grant such other relief as this Court deems just and proper.

Dated: April 1, 2021                    LAWYERS' COMMITTEE FOR CIVIL
                                        RIGHTS UNDER LAW


                                        By:  _____/s/_____
                                        Tianna Mays
                                        Bar No. 21597
                                        tmays@lawyerscommittee.org
                                        Arthur Ago (*pro hac vice pending*)
                                        aago@lawyerscommittee.org

                                        1500 K St. NW Suite 900
                                        Washington, DC 20005
                                        Tel (202) 662-8600
                                        Fax. (202) 783-0857

                                        *Attorneys for Class Plaintiffs*

Dated: April 1, 2021

ORRICK, HERRINGTON & SUTCLIFFE LLP


By: _____/s/_____

Ellen M. Murphy (*pro hac vice pending*)
emurphy@orrick.com
Anne C. Malik (*pro hac vice pending*)
amalik@orrick.com
Nicole Lloret (*pro hac vice pending*)
nlloret@orrick.com
Matthew Reeder (*pro hac vice pending*)
mtreeder@orrick.com
Alison Epperson (*pro hac vice pending*)
aepperson@orrick.com
Olamide Olusesi (*pro hac vice pending*)
oolusesi@orrick.com

51 West 51st Street
New York, NY 10019
Tel. (212) 506-3659
Fax. (212) 506-5151

*Attorneys for Class Plaintiffs*