**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND**

| | |
|---|---|
| **FAYE COTTMAN**, *et al.*<br>                    Plaintiffs,<br>     v.<br>**BALTIMORE POLICE DEPARTMENT**,<br>*et al*.<br>                    Defendants. | Civil Action No. 1:21-cv-00837-SAG |

**PLAINTIFFS' COMBINED OMNIBUS OPPOSITION TO
<u>DEFENDANTS' MOTIONS TO DISMISS AND MEMORANDUM IN SUPPORT</u>**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 2

    I.      BPD OFFICERS VIOLATED CRIME VICTIMS' CONSTITUTIONAL RIGHTS UNDER THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS. .................................................................................. 3

    II.     BPD'S CONSTITUTIONAL VIOLATIONS ARE DRIVEN BY ITS UNCONSTITUTIONAL POLICIES 1401 AND 703. ........................................ 5

PROCEDURAL HISTORY ................................................................................... 6

STANDARD OF REVIEW .................................................................................... 7

ARGUMENT ......................................................................................................... 8

    I.      DEFENDANTS' FACTUAL ARGUMENTS ARE INAPPROPRIATE UNDER RULE 12(B)(6). .................................................................................. 9

    II.     PLAINTIFFS HAVE ADEQUATELY PLEADED *MONELL* CLAIMS UNDER EACH PERMISSIBLE THEORY OF LIABILITY. ........................... 10

          A.      BPD Policies 703 and 1401 are Facially Unconstitutional. .................... 11

               1.     Facial Challenges are not Universally Disfavored ...................... 12

               2.     BPD Policies 703 and 1401 are facially unconstitutional because they command unreasonable searches and seizures; that they may not be unconstitutional in all of applications is of no help to Defendants. ......................................................... 13

               3.     The absence of the words "cell phone" in Policies 703 and 1401 is irrelevant to the question of whether the unreasonable cell phone search and seizure was conducted pursuant to these unconstitutional policies. ............................... 14

               4.     A continuing seizure can support a Fourth Amendment claim ....................................................................................... 14

               5.     Policy 703's command that BPD members should seize all of a crime victim's property is highly relevant to the Court's analysis ........................................................................ 15

               6.     Defendants' inappropriate factual arguments do not justify dismissal .................................................................................. 16

          B.      Plaintiffs Need Not Exhaust State Law or Administrative Remedies Before Challenging BPD's Unconstitutional Custom, Practice, or Usage of Failing to Provide Crime Victims with Procedural Due Process Protections. ....................................................... 17

**TABLE OF CONTENTS**
(continued)

Page

C. Defendant Scott, BPD Commissioners, Deputy Commissioner Nadeau, and the Supervisory Defendants are Liable under *Monell* in their Official Capacities for the Officer Defendants' Unconstitutional Acts ............................................................................ 20

    1. BPD Commissioners are officially liable because they had final supervisory authority to promulgate Policies 703 and 1401 .............................................................................................. 21

    2. BPD, BPD Commissioners, and Deputy Commissioner Nadeau are subject to *Monell* condonation liability. ................. 22

    3. Mayor Scott is officially liable because, after having actual notice of BPD's ongoing unconstitutional conduct, he condoned that conduct by taking no action ................................ 25

D. The Supervisory Defendants' Failure to Provide Adequate Supervision or Training Caused Plaintiffs' Injuries. ............................. 28

    1. Plaintiffs have adequately pleaded that Supervisory Defendants were responsible for Officer Defendants' training program and supervision. ................................................ 29

    2. Plaintiffs have adequately alleged that Supervisory Defendants' failure to train or supervise resulted from their deliberate indifference to Officer Defendants' known or widespread constitutional violations. ........................................... 30

    3. Plaintiffs have adequately pleaded that Supervisory Defendants' failure to train or supervise caused Plaintiffs' constitutional injuries .............................................................. 31

III. BPD COMMISSIONERS AND SUPERVISORY DEFENDANTS ARE INDIVIDUALLY LIABLE. ................................................................... 32

A. BPD Commissioners and Supervisory Defendants Had Actual or Constructive Knowledge that the Officer Defendants Were Engaged in Conduct that Risked Constitutional Injury to Citizens Like the Plaintiffs. .................................................................... 33

B. BPD Commissioners and Supervisory Defendants Were Deliberately Indifferent to or Tacitly Authorized the Officer Defendants' Offensive Practices. ....................................................... 33

C. BPD Commissioners' and Supervisory Defendants' Inaction is Causally Linked to the Constitutional Injuries Plaintiffs Suffered. ......... 34

# TABLE OF CONTENTS
(continued)

**Page**

IV.     OFFICER DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE A CRIME VICTIM'S RIGHT TO BE FREE FROM WARRANTLESS SEARCHES AND SEIZURES OF THEIR PERSONAL PROPERTY WITHOUT PROBABLE CAUSE IS WELL ESTABLISHED.................................................................................... 35

     A.     Officer Defendants' Warrantless Cell Phone Searches Violated a Clearly Established Constitutional Right Protecting Digital Data.......... 35

     B.     Officer Defendants' Warrantless, Blanket Seizures of Non-evidentiary Property Were Patently Unreasonable and Violated Plaintiffs' Clearly Established Rights. ..................................................... 37

     C.     Officer Defendants Violated the Fifth and Fourteenth Amendments by Failing to Provide Constitutionally Adequate Notice of Property Seizures. .............................................................................................. 39

CONCLUSION........................................................................................................... 41

## TABLE OF AUTHORITIES

**Cases**................................................................................................................**Page(s)**

*Alderman v. Baltimore City Police* ,
   952 F. Supp. 256 (D. Md. 1997)............................................................................26

*Anderson v. City of Cleveland*
   90 F. Supp. 2d 906 (E.D. Tenn. 2000)..................................................................29

*Anderson v. Creighton,*
   483 U.S. 635 (1987)................................................................................................35

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................................8

*Ashcroft v. al-Kidd,*
   563 U.S. 731, 741 (2011)........................................................................................35

*Auer v. Robbins,*
   65 F.3d 702 (8th Cir. 1995), *aff'd*, 519 U.S. 452 (1997).......................................29

*Bd. of Cty. Comm'rs of Bryan Cty.. v. Brown,*
   520 U.S. 397 (1997)................................................................................................23

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................................................8

*Blankenhorn v. City of Orange,*
   485 F.3d 463 (9th Cir. 2007) ..................................................................................22

*Blankenship v. Manchin,*
   471 F.3d 523 (4th Cir. 2006) ....................................................................................9

*Bordanaro v. McLeod,*
   871 F.2d 1151 (1st Cir. 1989)................................................................................24

*Estate of Bryant v. Baltimore Police Dep't,*
   No. CV ELH-19-384, 2020 WL 673571 (D. Md. Feb. 10, 2020) ....................26, 30

*Burley v. Baltimore Police Dep't,*
   422 F. Supp. 3d 986 (D. Md. 2019)......................................................................26

*Camara v. Mun. Court of S.F.,*
   387 U.S. 523 (1967)................................................................................................36

*Carpenter v. United States,*
   138 S. Ct. 2206 (2018)............................................................................................36

**TABLE OF AUTHORITIES**
(continued)

*Carter v. Morris,*
    164 F.3d 215 (4th Cir. 1999) ....................................................................................23

*Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,*
    794 F.Supp.2d 602 (D. Md. 2011) ..............................................................................9

*City of Canton v. Harris,*
    489 U.S. 378 (1989).........................................................................10, 20, 23, 28

*City of Los Angeles v. Patel,*
    576 U.S. 409 (2015)...........................................................................13, 14, 15

*City of St. Louis v. Praprotnik,*
    485 U.S. 112 (1988)...................................................................................10, 20

*City of Tahlequah v. Bond,*
    No. 20-1668, 2021 WL 4822664 (U.S. Oct. 18, 2021)...........................................35

*City of West Covina v. Perkins,*
    525 U.S. 234 (1999).................................................................................................18

*Connick v. Thompson,*
    563 U.S. 51 (2011)...................................................................................................23

*Coolidge v. New Hampshire,*
    403 U.S. 443 (1971).................................................................................................36

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018)...............................................................................................35

*Edwards v. City of Goldsboro,*
    178 F.3d 231 (4th Cir. 1999) ...............................................................................7, 8

*Flippo v. West Virginia,*
    528 U.S. 11 (1999)...................................................................................................15

*Grandstaff v. City of Borger,*
    767 F.2d 161 (5th Cir.1985) ...................................................................................24

*Green v. Obsu,*
    No. CV ELH-19-2068, 2021 WL 165135 (D. Md. Jan. 19, 2021) .........................11

*Hafer v. Melo,*
    502 U.S. 21. (1991).................................................................................................20

*Horton v. California,*
    496 U.S. 128 (1990).................................................................................................37

## TABLE OF AUTHORITIES
### (continued)

*Johnson v. Holmes*,
204 F. Supp. 3d 880 (W.D. Va. 2016) ......................................................................22

*Jones v. Jordan*,
No. CV GLR-16-2662, 2017 WL 4122795 (D. Md. Sept. 18, 2017) ..........................28, 30, 32

*Jones v. United States*,
357 U.S. 493 (1958) ......................................................................36

*Jordan by Jordan v. Jackson*,
15 F.3d 333 (4th Cir. 1994) ......................................................................23

*Kentucky v. Graham*,
473 U.S. 159 (1985) ......................................................................20

*Kessler v. Howard Cty..*,
972 F.2d 340 (4th Cir. 1992) ......................................................................29

*King v. Rubenstein*,
825 F.3d 206 (4th Cir. 2016) ......................................................................7

*Lankford v. Gelston*,
364 F.2d 197 (4th Cir. 1966) ......................................................................29

*Lucero v. Early*,
No. CV GLR-13-1036, 2019 WL 4673448 (D. Md. Sept. 25, 2019), *appeal dismissed sub nom. Lucero v. Balt. City Police Dep't*, No. 19-2072, 2020 WL 1520078 (4th Cir. Jan. 31, 2020) ......................................................................22, 25

*Lytle v. Doyle*,
326 F.3d 463 (4th Cir. 2003) ......................................................................23

*Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*,
576 F.3d 172 (4th Cir. 2009) ......................................................................10

*Mayor & City Council of Balt. v. Clark*,
404 Md. 13 (2008) ......................................................................26, 27

*Michigan v. Tyler*,
436 U.S. 499 (1978) ......................................................................37

*Missouri v. McNeely*,
569 U.S. 141 (2013) ......................................................................36

*Monell v. Department of Social Services of New York*,
436 U.S. 658 (1978) ...................................................................... *passim*

**TABLE OF AUTHORITIES**
(continued)

*Mora v. City of Gaithersburg,*
    519 F.3d 216 (4th Cir. 2008) ...........................................................................18, 19

*Mullane v. Cent. Hanover Bank & Tr. Co.,*
    339 U.S. 306 (1950).................................................................................................39

*Owens v. Balt. City State's Att'ys Off.,*
    767 F.3d 379 (4th Cir. 2014) ....................................................................10, 23, 24

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986)..........................................................................21, 25, 27

*Polk Cty. v. Dodson,*
    454 U.S. 312 (1981).................................................................................................28

*Presley v. City of Charlottesville,*
    464 F.3d 480 (4th Cir. 2006) ....................................................................16, 17

*Richards v. Janis,*
    No. CV-06-3064-EFS, 2007 WL 3046252, (E.D. Wash. Oct. 17, 2007) ...............22

*Riddick v. Sch. Bd. of Portsmouth,*
    238 F.3d 518 (4th Cir. 2000) ..................................................................................23

*Riley v. California,*
    573 U.S. 373 (2014)........................................................................................36, 39

*Semenova v. Md. Transit Admin.,*
    845 F.3d 564 (4th Cir. 2017) ....................................................................8, 15, 16

*Shaw v. Stroud,*
    13 F.3d 791 (4th Cir. 1994) ....................................................................33, 34, 35

*Shockley v. City of Newport News,*
    997 F.2d 18 (4th Cir. 1993) ..................................................................................29

*Slakan v. Porter,*
    737 F.2d 368 (4th Cir.1984) ..................................................................................35

*Smith v. Aita,*
    No. CCB–14–3487, 2016 WL 3693713, (D. Md. July 12, 2016)...........................22

*Spell v. McDaniel,*
    824 F.2d 1380 (4th Cir. 1987) ....................................................................21, 22, 25, 31

*Texas v. Brown,*
    460 U.S. 730 (1983)........................................................................................36, 37, 38

**TABLE OF AUTHORITIES**
**(continued)**

*Ulloa v. Prince George's Cty.*,
  No. CV DKC 15-0257, 2015 WL 7878956 (D. Md. Dec. 4, 2015)........................................23

*United States v. Davis*,
  690 F.3d 226 (4th Cir. 2012) ................................................................................38

*United States v. Davis*,
  997 F.3d 191 (4th Cir. 2021) ................................................................................15

*United States v. Jacobsen*,
  466 U.S. 109 (1984)......................................................................14, 36, 37, 38

*United States v. Jones*,
  565 U.S. 400 (2012)................................................................................................11

*United States v. Place*,
  462 U.S. 696 (1983)......................................................................................14, 38

*United States v. Pratt*,
  915 F.3d 266 (4th Cir. 2019) ................................................................................14

*Van Buren v. Walmart, Inc.*,
  No. CV DKC 19-0911, 2020 WL 1064823 (D. Md. Mar. 5, 2020),
  *aff'd*, 855 F. App'x 156 (4th Cir. 2021)....................................................9, 16

*Villarreal v. City of Laredo*,
  No. 20-40359, slip op. (5th Cir., Nov. 1, 2021)....................................................35

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)..................................................................................................9

*Wash. State Grange v. WashState Republican Party*,
  552 U.S. 442 (2008)........................................................................................12, 13

*Washington v. Baltimore Police Dep't*,
  457 F. Supp. 3d at 536 (D. Md. 2020) ..................................................22, 24, 31

*Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*,
  728 F.3d 354 (4th Cir. 2013) ..................................................................................9

*Wellington v. Daniels*,
  717 F.2d 932 (4th Cir. 1983) ........................................................................21, 28

*Wilkins v. Montgomery*,
  751 F.3d 214 (4th Cir. 2014) ........................................................28, 32, 33, 34

**TABLE OF AUTHORITIES**
(continued)

*Winston v. Lee*,
   470 U.S. 753 (1985)..............................................................................................37

*Wyatt v. Cole*,
   504 U.S. 158 (1992)................................................................................................8

*Zurcher v. Stanford Daily*,
   436 U.S. 547 (1978)..............................................................................................37

**Statutes** ...............................................................................................**Page(s)**

42 U.S.C. § 1983 ........................................................................................ *passim*

Baltimore City Charter, Article IV, § 6(c)..............................................................26

Baltimore City Code, Article I, § 1-4(c)(2) ...........................................................26

Baltimore City Code Article I, § 5-1(b)(2)(iii) .....................................................26

Baltimore City Code Article I, § 7-10(a)(2) ..........................................................26

Baltimore City Code Article I, § 8-1(c) .................................................................26

Baltimore City Code Article I, § 9-1(b).................................................................26

Baltimore City Code Article I, § 10-1(b)...............................................................26

Baltimore City Code Article I, § 14-3(c)................................................................26

Baltimore City Code Article I, § 21 .......................................................................26

Baltimore City Code Article I, § 40-2 ....................................................................26

Baltimore City Code Article I, § 41-1(c) ................................................................26

Baltimore City Code Article I, § 51-2(b)(2)(ii) ......................................................26

Baltimore City Code Article I, § 55-4(c)(8) ...........................................................26

Code of Public Laws of Baltimore City, PLL § 16-5(e)..........................................26

Code of Public Local Laws of Baltimore City § 16-4 .............................................21

Code of Public Local Laws of Baltimore City § 16-7(8)..........................................21

FLSA.......................................................................................................................29

**TABLE OF AUTHORITIES**
**(continued)**

**Other Authorities** ................................................................................................. **Page(s)**

Fourth Amendment ....................................................................................................... *passim*

Fifth Amendment ..........................................................................................................6, 7, 40

Fourteenth Amendment ................................................................................................. *passim*

Fed. R. Civ. P. 8 ...........................................................................................................1, 2, 8, 9

Fed. R. Civ. P. 12(b) ..................................................................................................... *passim*

Fed. R. Civ. P. 12(d) ............................................................................................................9

Fed. R. Civ. P. 23 .................................................................................................................9

https://www.baltimorepolice.org/stops-searches-and-arrestsfair-impartial-
    policing-training-curriculum (PDF available at:
    https://tinyurl.com/ypw7nuk4) ...................................................................................30

Fed. R. Civ. P. 56 .................................................................................................................9

## INTRODUCTION

Plaintiffs in this case represent the most vulnerable people that the Baltimore Police Department ("BPD") encounters. Plaintiff Damon Gray was shot seven times in the back, neck, and chest. Amended Class Action Complaint ("AC"), ECF Doc. 38, ¶ 14 (July 8, 2021). Plaintiff Amber Spencer was shot in the head and chest. AC ¶ 15. Plaintiff Faye Cottman and her son were both shot in the head. AC ¶ 16. Plaintiff Audrey Carter's son was shot to death. AC ¶ 17. Ignoring the protections of the Fourth Amendment, BPD and its Officers further victimized each Plaintiff— and the class members they represent—by seizing *all* of their personal property, including cell phones and property clearly lacking evidentiary value, and searching it without consent, warrant, or applicable exception to those requirements. AC ¶¶ 50-53, 57, 61, 63. These warrantless searches and wholesale seizures are unconstitutional and are the reason for this lawsuit.

Defendants filed two motions to dismiss this lawsuit, each without merit: one motion was filed by the policymaking and municipal defendants—including Mayor Scott, BPD Commissioners, and Deputy Commissioner Nadeau; the other was filed by the Officer Defendants and the Supervisory Defendants.[1] Because the two motions raise overlapping arguments, Plaintiffs address them in this omnibus opposition.

Defendants' motions fail for four reasons. First, Defendants improperly contest Plaintiffs' factual allegations—allegations this Court must accept as true at the motion to dismiss phase. Second, the motions fail because Plaintiffs have, under the *Monell* doctrine, properly pleaded alternative theories of liability that are each well-founded on the facts alleged. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 694 (1978); Fed. R. Civ. P. 8(d)(2). Third, the separate

---

[1] Throughout this brief, Plaintiffs refer to the defendants using the nomenclature established in the AC. Detectives Converse, DiPasquale, Macklin, and O'Connor, Lieutenants Dressler and Walrath, Sergeant Ross, and BPD Officers Doe 1-20 are the "Officer Defendants." AC ¶ 31. Deputy BPD Commissioner Nadeau, Lieutenants Dressler and Walrath, Sergeant Ross, and Supervisory BPD Officers Does 1-20 are the "Supervisory Defendants." *Id.* ¶ 32. Current and former BPD Commissioners Harrison, Tuggle, and De Sousa are the "BPD Commissioners." *Id.* ¶ 21. The "Defendants" includes the Officer Defendants, the Supervisory Defendants, the BPD Commissioners, BPD, and Mayor Scott.

argument made by the Supervisory Defendants in their motion to dismiss regarding *respondeat superior* liability fails because Plaintiffs properly pleaded that these defendants are liable under a theory of supervisor liability. Finally, the motions fail because none of the Officer Defendants are immune from suit for the unconstitutional searches and seizures that Plaintiffs were forced to endure. In addition to these improper factual and meritless legal arguments, Defendants ask this Court to apply the wrong standard of review for 12(b)(6) motions to dismiss. When viewed under the correct standard, Plaintiffs' pleadings easily clear Fed. R. Civ. P. 8's low bar. Accordingly, Defendants' Motions to Dismiss should be denied.

## **FACTUAL BACKGROUND**

Plaintiffs pleaded the following facts, which the Court must accept as true in its consideration of Defendants' Motion to Dismiss.

The Officer Defendants unreasonably seized, searched, and destroyed Plaintiffs' personal property without legal basis—no warrants procured, no case-specific exception invoked, no consent received. AC ¶ 3. These violations were not occasional acts of rogue officers. They reflect an intentional, department-wide disregard of applicable constitutional norms that continue unchecked in at least four ways. First, these violations were conducted pursuant to BPD customs, practices, and written policies. *Id*. ¶¶ 74-87. Second, BPD Sector Supervisors and Shift Commanders, including Defendants Ross, Walrath, and Dressler, supervised these violations. *Id*. ¶ 83. Third, BPD's Homicide Section, Criminal Investigations Bureau ("CIB"), the Citywide Shooting Unit ("CWS"), the District Detective Unit ("DDU"), and the Public Integrity Bureau ("PIB") authorized and supervised these violations of Plaintiffs' rights. *Id*. Finally, BPD and Baltimore City policymakers, including BPD Commissioners, Deputy Commissioner Nadeau, and Defendant Scott, condoned these constitutional violations. *Id*.

BPD prolonged Plaintiffs' constitutional deprivations by ignoring their efforts to retrieve their personal property. *Id*. ¶¶ 33, 37. Plaintiffs requested the return of their property on numerous occasions. *Id*. ¶¶ 55, 58, 64. With just a single exception, these requests went unanswered, and

BPD never returned the property it unreasonably seized. *Id*. ¶¶ 14, 15, 16, 17, 54, 55, 49, 60-62, 71, 73.

## I.     BPD OFFICERS VIOLATED CRIME VICTIMS' CONSTITUTIONAL RIGHTS UNDER THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS.

On March 14, 2019, Plaintiff Faye Cottman suffered a gunshot wound to the head when she and her son were attacked at a local playground. AC ¶ 47. Police arrested Ms. Cottman's assailant at the scene. *Id.* ¶ 49. After this arrest, but before Ms. Cottman was treated, Defendant Macklin seized Ms. Cottman's property, including her cell phone, without a warrant, without her consent, and without providing written notice of the seizure. *Id.* ¶ 50. Defendant Macklin searched Ms. Cottman's phone for any communications Ms. Cottman may have had with the shooter—who was already in police custody and posed no immediate threat justifying the warrantless search. *Id.* ¶¶ 49, 53. Defendant Macklin's illegal search produced no evidence of communications between Ms. Cottman and her assailant. *Id*. Nonetheless, Defendant Macklin identified the phone as "evidence" and took it into BPD custody when Ms. Cottman asked for the phone's return at the hospital. *Id*.

On September 11, 2019, the case against Ms. Cottman's shooter concluded, and Ms. Cottman contacted Defendant Macklin multiple times to retrieve her property. *Id*. ¶ 55. Defendant Macklin initially agreed to release the property and asked Ms. Cottman to contact her in a week. *Id.* Defendant Macklin ignored future efforts to reach her, and Ms. Cottman's property remains in BPD custody. *Id.*

On June 29, 2019, Plaintiff Damon Gray was shot seven times in the back, neck, and chest. AC ¶ 60. While Mr. Gray received treatment for his grievous injuries, Defendant DiPasquale seized Mr. Gray's property—including his cell phone, a bracelet, and a necklace—without a warrant, consent, or notice. *Id.* ¶¶ 60-62. Mr. Gray's property remains in BPD custody. *Id.*

Plaintiff Amber Spencer was shot in the head and chest on March 20, 2020. *Id.* ¶ 56. Shortly after an ambulance transported Ms. Spencer to Johns Hopkins Hospital, Defendant Converse, without consent or a warrant, seized Ms. Spencer's personal property, including her cell phone,

$400 in cash, and her car keys. *Id.* ¶¶ 56-57. Defendant Converse gave Ms. Spencer no written notice of his seizure of her property. *Id.* ¶ 58. Instead, he told her she could retrieve her property at the police station at some undetermined point when COVID-19-related restrictions allowed. *Id.* ¶¶ 58-59. Despite her repeated requests to Defendant Converse, Ms. Spencer's property remains in BPD custody. *Id.* ¶ 59.

On June 9, 2018, Plaintiff Audrey Carter's son, Dwayne D. Cheeks, was shot and killed in Baltimore. AC ¶ 63. BPD Officers seized, inventoried, and logged Mr. Cheeks' personal property—including his cell phone, watch, driver's license, a lottery ticket, and various keys—and $435 in cash into BPD's Evidence Control Unit ("ECU"). *Id.* Ms. Carter immediately attempted to recover Mr. Cheeks' non-evidentiary property. *Id.* ¶ 64. Specifically, Ms. Carter repeatedly asked Officer Defendants O'Connor, Ross, and Walrath for Mr. Cheeks' property. *Id.*

Despite Ms. Carter's persistence, BPD destroyed some of Mr. Cheeks' property on December 12, 2019. *Id.* ¶ 65. In response, Ms. Carter asked then-City Council President Brandon Scott to raise the issue with the Police Commissioner, the Mayor, and the City Council "so that no other mother and family is devastated and retraumatized." *Id.* ¶ 71. After an initial reply, neither Defendant Scott nor any of his staff members took steps to resolve the problem. *Id.* ¶ 71.

Ms. Carter also sought answers from the ECU and learned that BPD incorrectly "notified" her dead son that his property would be destroyed. *Id.* ¶ 69. BPD also incorrectly mailed a letter to her at the wrong address—despite her near-constant communication with BPD from her current address. *Id.*

Ms. Carter filed two formal complaints with BPD's PIB objecting to the destruction of Mr. Cheeks' property and received nearly identical form responses to each complaint that said "[t]he investigation has revealed that the available evidence did not meet the burden of proof necessary to sustain the allegation(s)." *Id.* ¶ 70.

Apart from the $435 Mr. Cheeks was carrying at his death, his property remains in BPD custody or was destroyed—despite Ms. Carter's extraordinary efforts to get it back. *Id.* ¶ 73.

II.   **BPD'S   CONSTITUTIONAL   VIOLATIONS   ARE   DRIVEN   BY   ITS UNCONSTITUTIONAL POLICIES 1401 AND 703.**

BPD Policy 1401 governs the seizure, control, and disposition of personal property during investigations. AC ¶ 74. It is implemented by order of BPD's Commissioner and applies to all BPD officers and employees. *Id.* The policy authorizes the seizure of non-evidentiary property and fails to define "evidentiary value," which encourages officers to seize an *un*reasonable array of personal property from crime victims. *Id*. ¶¶ 74, 79. Further, Policy 1401 requires merely that victims be notified within 90 days of these unreasonable seizures and again at least 90 days before any seized non-evidentiary property is destroyed. *Id.* ¶ 79. BPD failed to notify any of the Plaintiffs within these time periods. *Id*. ¶¶ 14, 15, 16, 17, 54, 55, 49, 60-62, 71, 73.

BPD Policy 1401 purportedly requires BPD to document on BPD Form 56 property submitted to BPD's ECU. BPD Form 56—which no Plaintiff in this case received—includes a space for a "detailed" inventory of seized property and provides that, upon written request, BPD will determine whether to return the property within 60 days. *Id*. Despite not receiving BPD Form 56 and nonetheless requesting the return of seized property in writing, Plaintiffs have not, with a single exception, had any property returned to them or been notified that it would be returned. *Id.* ¶ 80. Finally, the policy requires BPD officers and employees to immediately return currency taken from a victim, a rule routinely flouted by BPD and its officers. *Id.* ¶ 75.

BPD Policy 703 also applies to all BPD officers and employees and governs the seizure, control, and disposition of property. *Id.* ¶ 81. It requires BPD officers accompanying a victim to the hospital to "[t]ake possession of the clothing of the victim and all available evidence." *Id.* ¶ 82. As with BPD Policy 1401, BPD Policy 703 uses the word "evidence" without requiring any reasonableness determination prior to the seizure of a victim's property and makes no meaningful distinction between evidentiary and non-evidentiary property. *Id*. And as with BPD Policy 1401, none of BPD Policy 703's "Associated Policies" contain any requirement for a reasonableness determination.

5

## PROCEDURAL HISTORY

To remedy these constitutional violations, Plaintiffs filed suit on April 1, 2021. The Amended Complaint alleges eleven causes of action arising from the unreasonable searches, seizures, and destruction of Plaintiffs' property in violation of 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. AC ¶¶ 100-242. For the Court's reference, these claims are summarized in the following table.

| Claim | Defendants | Theory of Liability | Const. Provision |
|---|---|---|---|
| 1 | BPD, BPD Commissioners | Policies 703 and 1401 are facially unconstitutional. | 4th Amend. & 14th Amend. |
| 2 | BPD Commissioners, Officer Defendants, Supervisory Defendants | BPD's unreasonable searches of crime victims' cell phones are unconstitutional. | |
| 3 | | BPD's unreasonable seizures of crime victims' property are unconstitutional. | |
| 4 | BPD, BPD Commissioners | BPD's custom, practice, or usage of unreasonably searching and seizing crime victims' property is unconstitutional. | |
| 5 | BPD, BPD Commissioners, Supervisory Defendants | BPD has failed to train BPD members on the proper conduct of searches and seizures. | |
| 6 | | BPD has failed to supervise the conduct of searches and seizures. | |
| 7 | | BPD's custom, practice, or usage of failing to provide crime victims whose property has been seized notice and opportunity to be heard is unconstitutional. | 5th Amend. & 14th Amend. |
| 8 | | BPD has failed to train BPD members on providing adequate notice and opportunity to be heard. | |
| 9 | | BPD has failed to supervise the provision of adequate notice and opportunity to be heard. | |

| Claim | Defendants | Theory of Liability | Const. Provision |
|---|---|---|---|
| 10 | Brandon Scott | Defendant Scott condoned Defendants' custom, practice, or usage of unreasonably searching and seizing crime victims' property. | 4th Amend. & 14th Amend. |
| 11 | | Defendant Scott condoned Defendants' custom, practice, or usage of failing to provide crime victims whose property has been seized notice and opportunity to be heard is unconstitutional. | 5th Amend. & 14th Amend. |

The Amended Complaint seeks damages and declaratory and injunctive relief against the Officer Defendants who violated Plaintiffs' rights, the Supervisory Defendants, and BPD, as well as the Mayor and BPD Commissioners, who failed to protect Plaintiffs from flagrant and widespread constitutional violations by the city's police. *Id.* ¶¶ a-s.

On September 21, 2021, Defendants moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Memo. ISO Officer Defs' Mot. to Dismiss ("Offs.' MTD"), ECF Doc. 45-1 (Sept. 21, 2021); Memo. ISO Defs. BPD, Harrison, Tuggle, DeSousa, Nadeau, and Scott's Mot. to Dismiss Amended Complaint ("BPD MTD"), ECF Doc. 46-1 (Sept. 21, 2021).

On October 4, 2021, Plaintiffs and Defendants filed a joint motion setting a briefing schedule, which this Court granted, extending the deadline for this opposition to November 5, 2021. Plaintiffs now ask the Court to deny Defendants' motions.

## **STANDARD OF REVIEW**

Defendants misstate the standard of review. Rule 12(b)(6) permits Defendants to "test[] the sufficiency of a complaint" but not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 342 (4th Cir. 1999)). Contrary to Defendants' assertions, a complaint will survive a motion to dismiss unless it lacks "a short and plain statement

of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), or if it does not "state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A facially plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In reviewing a complaint to determine whether a facially plausible claim exists, the Court must assume all factual allegations of the complaint are true and must grant all reasonable inferences in plaintiff's favor. *See Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). Under this correct standard, Defendants' motions fail.

## ARGUMENT

To establish § 1983 liability, a plaintiff must prove that someone acting "under color of" state law deprived him or her of a federal statutory or constitutional right. 42 U.S.C. § 1983; *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (statute "deter[s] state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights"). Here, Plaintiffs allege, pursuant to 42 U.S.C. § 1983, violations of their Fourth, Fifth, and Fourteenth Amendment rights.

As previewed above, Defendants' motions to dismiss fail for four reasons. First, Defendants improperly argue facts. *Edwards*, 178 F.3d at 244 (all "well-pleaded allegations" must be accepted as true). Second, the motions fail because Plaintiffs have properly pleaded alternative *Monell* theories of liability, each well-founded on the facts alleged. *Monell*, 436 U.S. at 694; Fed. R. Civ. P. 8(d)(2). Third, the separate argument made by the Supervisory Defendants in their motion to dismiss fails because Plaintiffs properly pleaded that these Defendants are liable under a theory of supervisor liability. Finally, the motions fail because none of the Defendants are immune from suit for their obviously unconstitutional searches and seizures. As a result, the Court should deny the Defendants' motions to dismiss.

## I.     DEFENDANTS' FACTUAL ARGUMENTS ARE INAPPROPRIATE UNDER RULE 12(B)(6).

Rather than engage with Plaintiffs' well-pleaded allegations, Defendants improperly invite this Court to referee a contest of facts in two ways.[2] First, they argue facts that conflate the Fed. R. Civ. P. 8 pleading standard with Fed. R. Civ. P. 23(a)'s commonality requirement.[3] BPD MTD at 15, 24, 29. The Court should reject this effort. *See, e.g., Van Buren v. Walmart, Inc.*, No. CV DKC 19-0911, 2020 WL 1064823, at *3 (D. Md. Mar. 5, 2020), *aff'd*, 855 F. App'x 156 (4th Cir. 2021) ("[t]he proper time to challenge the inclusion of putative class members . . . is at the class certification stage, not [in a motion to dismiss]."). Second, Defendants challenge Plaintiffs' well-pleaded arguments by introducing their own extraneous facts; specifically, Exhibit 3 of BPD's Motion to dismiss, a copy of BPD Policy 1017, discussed in that motion's Section II.A.  Unlike Defendants' Exhibit 1, a copy of BPD Policy 701, and Exhibit 2, a copy of BPD Policy 1401, BPD Policy 1017 is not integral to the allegations in the Amended Complaint. *Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006). Rather, it was introduced in rebuttal to Plaintiffs' arguments regarding Policies 703 and 1401.  Generally, a court may not consider facts beyond the pleadings on a Rule 12(b)(6) motion. *See Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011). Yet in raising BPD Policy 1017, which is entirely extrinsic to the allegations in the Amended Complaint, Defendants are inappropriately asking the Court to weigh facts at the motion to dismiss stage.

Additionally, by seeking dismissal with prejudice, BPD MTD at 33, Defendants ignore that "a dismissal that operates with prejudice is warranted only when the trial court determines that 'the

---

[2] Only by converting their motion to dismiss to a summary judgment motion may Defendants contest facts. Doing so now is premature. Fed. R. Civ. P. 12(d); *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 360 (4th Cir. 2013) ("when matters outside the pleadings are presented to and not excluded by the court, the Rule 12(b)(6) motion must be treated as one for summary judgment under Rule 56, and all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

[3] Fed. R. Civ. P. 8 requires this Court to accept Plaintiffs' allegations as true. By contrast, Fed. R. Civ. P. 23 would require this Court to engage in factfinding. *See generally, Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351–52 (2011).

allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.".'" *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (quoting *Belizan v. Hershon*, 434 F.3d 578, 583 (D.C. Cir. 2006)). Dismissal with prejudice is therefore inappropriate, and—for any claim the Court might be inclined to dismiss—Plaintiffs are entitled to amend their complaint.

## II.    PLAINTIFFS HAVE ADEQUATELY PLEADED *MONELL* CLAIMS UNDER EACH PERMISSIBLE THEORY OF LIABILITY.

Defendants' arguments that Plaintiffs have inadequately pleaded their *Monell* claims are without merit. Under *Monell*, a municipality and its policymakers may be held liable for their unconstitutional policies and any practices that reinforce these unconstitutional policies. To plead *Monell* liability, a plaintiff must allege that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Monell*, 436 U.S. at 694. Federal courts have recognized at least five types of governmental "policies" for which a municipality can be held liable under *Monell*: (1) formal policy, *Monell*, 436 U.S. at 690; (2) de facto policy and custom, *id.* at 691; (3) failure to train and/or supervise, *City of Canton v. Harris*, 489 U.S. 378, 387-88 (1989); (4) a final policymaker's single decision, *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); and (5) condonation of a subordinate's unconstitutional act, *id.* at 127.

Contrary to Defendants' assertions, prevailing on a *Monell* claim at the motion to dismiss stage is relatively easy because Plaintiffs need only meet the general pleading requirements. *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014) ("Although prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier."). This Court has recognized:

> In the context of *Monell* liability, it will often be the case that a plaintiff lacks specific details regarding the municipal actor's internal policies and training procedures before discovery is conducted. Although boilerplate allegations will not suffice, at the motion to dismiss stage, courts should not expect the plaintiff to possess a rich set of facts concerning the allegedly unconstitutional policy and the responsible policymakers.

*Green v. Obsu*, No. CV ELH-19-2068, 2021 WL 165135, at \*15 (D. Md. Jan. 19, 2021). Plaintiffs far surpass this relatively low bar to survive a motion to dismiss by pleading each of their *Monell* claims with specificity, as discussed below.

Defendants offer three meritless arguments to support their Motions to Dismiss Plaintiffs' *Monell* claims, which Plaintiffs address below. First, contrary to Defendants' assertions, facial challenges are not disfavored. Second, contrary to Defendants' arguments, the law is clear that a continuing seizure can support a Fourth Amendment claim. And third, the factual differences between the identical constitutional injuries Plaintiffs suffered do not warrant dismissal as Defendants argue.

**A.    BPD Policies 703 and 1401 are Facially Unconstitutional.**

Plaintiffs' First Cause of Action plausibly alleges that BPD Policies 703 and 1401 are unconstitutional under the Fourth Amendment to the U.S. Constitution (made applicable to BPD by the Fourteenth Amendment) because they permit unreasonable searches and seizures of crime victims' personal, non-evidentiary property. AC ¶¶ 100-112. Defendants argue that Plaintiffs' facial challenge is implausible because (i) Fourth Amendment facial challenges are disfavored, (ii) Policies 703 and 1401 are not unconstitutional in every conceivable application, (iii) Policies 703 and 1401 do not instruct BPD members to search cell phones, (iv) continued retention of property cannot make an otherwise lawful seizure unlawful, (v) Policy 703's command that BPD members should seize all of a crime victim's property is "not constitutionally relevant," and (vi) factual distinctions between the named Plaintiffs' circumstances render a facial challenge to the unlawful searches and seizures here impossible. BPD MTD at 12-17.

Defendants are wrong and their motions to dismiss Plaintiffs' facial challenge to Policies 703 and 1401 must therefore be denied. Each policy authorizes BPD to take possession of a person's property or invade a person's reasonable expectation of privacy even when such possession or invasion is clearly unreasonable. *United States v. Jones*, 565 U.S. 400, 404-07 (2012).

As a preliminary matter, Defendants erroneously read Plaintiffs' Amended Complaint to include a facial procedural due process challenge. BPD MTD at 17-22. Plaintiffs have not alleged that BPD policies fail on their face to provide crime victims with procedural due process. However, arguing against this imagined facial procedural due process challenge, Defendants claim that Plaintiffs have failed to exhaust state remedies. BPD MTD at 19-22. Because Plaintiffs' Seventh Cause of Action does raise a challenge to BPD's custom, practice, or usage of violating Plaintiffs' procedural due process rights—and because Plaintiffs need not exhaust state remedies to sustain that cause of action—we separately address this argument by Defendants in Section II.B, below.[4]

We now address each of Defendants' specific contentions in turn.

### 1.    Facial Challenges are not Universally Disfavored.

The Court should reject Defendants' argument that facial challenges are universally disfavored because it misunderstands *Washington State Grange*. BPD MTD at 11 (citing *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). Unlike the BPD policies and practices in this case, *Washington State Grange* challenged a statute that had not yet been implemented: a crucial distinction between that case and this one. *Washington State Grange*, 552 U.S. at 450. The plaintiffs there theorized that—if allowed to take effect—the law would overburden political candidates' and political parties' rights of association. *Id.* at 448. Unlike Plaintiffs' claims here, which cite to widespread, specific, and ongoing constitutional violations, claims like those in *Washington State Grange* necessarily rest on speculation because the unconstitutional application of the unenacted law exists only in the plaintiffs' pleadings. In short, for the purposes of the motions to dismiss, this Court need not speculate about how BPD's policies are unconstitutional, as Plaintiffs have provided specific and well-pleaded facts of how they have already been implemented, which the Court must credit at this stage. Because

---

[4] Plaintiffs also allege causes of action that are derivative of BPD's custom, practice, or usage of procedural due process violations in the Eighth, Ninth, and Eleventh Causes of Action, regarding BPD's failure to train, failure to supervise, and condonation liability for such violations, respectively. BPD's motion to dismiss these causes of action fail for the same reason as the Seventh Cause of Action.

*Washington State Grange* expressed disfavor for facial challenges to as-yet unimplemented statutes and is therefore inapposite, the Court is left with guidance in *City of Los Angeles v. Patel* that "facial challenges under the Fourth Amendment [like Plaintiffs'] are not categorically barred or especially disfavored." 576 U.S. 409, 415 (2015).

> **2.     BPD Policies 703 and 1401 are facially unconstitutional because they command unreasonable searches and seizures; that they may not be unconstitutional in all of applications is of no help to Defendants.**

Defendants erroneously argue that a facial challenge "must establish that a law is unconstitutional in all of its applications." BPD MTD at 11 (quoting *Washington State Grange*, 552 U.S. at 449 (denying facial challenge to newly enacted, never enforced voting law). In reality, policies that command acts that might be constitutional sometimes but are unconstitutional at others are facially unconstitutional. Courts analyzing facial challenges consider "only applications of the [policy] in which it actually authorizes or prohibits conduct." *Patel*, 576 U.S. at 418. So, "when addressing a facial challenge to a [policy] authorizing warrantless searches [and seizures], the proper focus of the constitutional inquiry is searches [and seizures] that the [policy] actually authorizes, not those for which it is irrelevant." *Id.* Ignoring this legal prerequisite, Defendants hypothesize that one or more Plaintiffs—despite alleging otherwise—may have implied consent to search or that some of the non-evidentiary personal property the BPD unreasonably seized may have been in plain view. BPD MTD at 16.

These hypotheticals have no place here.[5] Searches and seizures of *evidence* based on consent, a warrant, or a reasonable case-specific exception are irrelevant to Plaintiffs' facial challenges to BPD policies—these are not the actions that Plaintiffs challenge. *See Patel*, 576 U.S. 418-19 (otherwise constitutional searches are irrelevant when assessing constitutionality of statutes authorizing warrantless searches). Here, both BPD Policies 1401 and 703 authorize the warrantless and nonconsensual seizures and searches of crime victims' non-evidentiary property; in other words, these policies authorize unconstitutional searches and seizures. Because the

---

[5] This is particularly true where, as here, entertaining these hypotheticals requires the Court to speculate on the possible occurrence of facts not alleged in the Amended Complaint.

policies authorize the search and seizure of all victim property without offering any guidance for assessing their reasonableness, they violate the Fourth Amendment on their face.[6]

### 3.  The absence of the words "cell phone" in Policies 703 and 1401 is irrelevant to the question of whether the unreasonable cell phone search and seizure was conducted pursuant to these unconstitutional policies.

As Plaintiffs have alleged, Policies 703 and 1401 command that BPD members search and seize all available property belonging to victims of serious crimes. AC ¶¶ 74-87. That the policies fail to mention specific types of property, like cell phones, in this blanket command has no bearing on the issues now before this Court. Ms. Cottman was the victim of a serious assault. *Id.* ¶¶ 47-48. Ms. Cottman's cell phone was her property. *Id.* ¶¶ 49-50. Officer Macklin unreasonably seized and searched it pursuant to BPD Policies 703 and 1401. *Id.* ¶¶ 50-53. This allegation is well pleaded.

### 4.  A continuing seizure can support a Fourth Amendment claim.

Defendants incorrectly assert that a "seizure of property is a discrete event and its constitutionality under the Fourth Amendment is determined [only] at the time it was seized." BPD MTD at 13-14. Their assertion is flatly incorrect. Unreasonably prolonged seizures like those in this case are constitutional injuries. *See United States v. Jacobsen*, 466 U.S. 109, 124 (1984) (a seizure "lawful at its inception" becomes unlawful when "its manner of execution unreasonably infringes possessory interests"); *United States v. Place*, 462 U.S. 696, 708-10 (1983) (even if initial seizure was permissible, 90-minute detention of luggage without probable cause was unreasonable and exacerbated by police failure to tell respondent where his luggage was being taken, how long he would be without it, and how to get it back); *United States v. Pratt*, 915 F.3d 266, 271-273 (4th Cir. 2019) (31-day warrantless, nonconsensual seizure of cell phone without "independent

---

[6] Defendants' logic would preclude facial relief in every Fourth Amendment challenge to a statute authorizing warrantless searches" and seizures, *Patel*, 576 U.S. at 418, because such searches and seizures will never be unconstitutional in *all* applications since an exception *could* apply under some set of facts.

evidentiary value" was unreasonable where government did not justify the length of the seizure). Defendants' ongoing possession of Plaintiffs' property violates the Fourth Amendment.

Policy 1401 authorizes these continuing seizures. While Defendants baldly assert that Policy 1401 is constitutional, they do not explain why. They merely state that "Policy 1401 does not address seizures at all," and thus is "facially constitutional" as to seizures. BPD MTD at 15. But Plaintiffs have alleged that BPD has retained—and continues to retain—Plaintiffs' property unlawfully. AC ¶¶ 55, 57, 59, 62, 64-73. Defendants do not address these allegations, which this Court must accept as true. *Semenova*, 845 F.3d at 567. Thus, Defendants failed to rebut Plaintiffs' well-pleaded allegations that Policy 1401, on its face, violates the Fourth Amendment. Their motion with respect to Plaintiffs' facial challenge to the unconstitutionality of Policy 1401 must be denied.

### 5.    Policy 703's command that BPD members should seize all of a crime victim's property is highly relevant to the Court's analysis.

Defendants concede that Policy 703's primary purpose is ensuring chain of custody and preserving the integrity of any criminal investigation. BPD MTD at 15. Policy 703 violates the Fourth Amendment *because* it focuses on criminal investigations and lacks any warrant, reasonableness, or consent requirements. *See, e.g.*, *Patel*, 576 U.S. at 420 (policies authorizing warrantless searches might be reasonable only where the purpose of the searches is distinguishable from the government's interest in crime control). Defendants fail to carry their burden of demonstrating sufficiently strong governmental interests to make the warrantless searches and seizures BPD policies authorize—in the context of criminal investigations—constitutional under the Fourth Amendment. *United States v. Davis*, 997 F.3d 191, 195 (4th Cir. 2021). Defendants also assert that Policy 703 "contemplates a lawful seizure of [] evidence," BPD MTD at 15, but this is not an accurate reading of the policy. Policy 703 authorizes officers to seize *all* of a crime victims' property, whether reasonable or not. That *some* seized property may be evidence of a crime is beside the point. The indiscriminate seizure and search of all available property is unconstitutional. *Flippo v. West Virginia*, 528 U.S. 11, 14 (1999) (a warrantless search of

"anything and everything found" in a crime scene was inconsistent with the Fourth Amendment). Policy 703's mandate to conduct blanket searches and seizures is unconstitutional.

> ### 6.    Defendants' inappropriate factual arguments do not justify dismissal.

Defendants incorrectly assert that a facial challenge is inappropriate due to the factual differences among the Plaintiffs' individual cases. BPD MTD at 15. Defendants then recite some of the facts alleged in the Amended Complaint to distinguish BPD's various illegal seizures and searches, "[e]ven amongst the putative Subclass members, their items were seized under different circumstances." *Id*. This argument does not challenge the sufficiency of the Amended Complaint; it is a premature challenge to class certification. *Van Buren*, 2020 WL 1064823, at *3 ("[t]he proper time to challenge the inclusion of putative class members . . . is at the class certification stage, not [in a motion to dismiss]."). Accordingly, Defendants' attempts to differentiate between the instances in which the BPD violated Plaintiffs' constitutional rights are inappropriate at this stage and can be disregarded.

Defendants also dispute some of the facts alleged. BPD MTD at 15-16 (challenging lack of consent, arguing that one Plaintiff may have been deceased at the time of property seizure, and arguing that some property may have been seized in plain view). As discussed above in Section I, Defendants cannot dispute factual allegations in their motion to dismiss. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (purpose of 12(b)(6) is not to resolve contests surrounding the facts); *Semenova*, 845 F.3d at 567 (on a 12(b)(6) motion, the court must assume all factual allegations of the complaint are true and must grant all reasonable inferences in plaintiff's favor). Accordingly, the Court should not consider Defendant's premature factual disputes and must deny Defendants' motions.

* * * * *

Though Defendants offer six arguments for dismissal of Plaintiffs' facial challenge, these arguments come to nothing. As the Amended Complaint sufficiently alleges, BPD Policies 703 and 1401 are unconstitutional because they authorize BPD officers to search and to seize property

without reference to the constitutional touchstones of warrant, consent, or case-specific exception. AC ¶¶ 74, 82, 103-06. BPD policy 1401 presumes blanket, warrantless searches and wholesale, warrantless seizures of *all* property without any initial reasonableness determination. Policy 1401 purports to require notice when non-evidentiary property is seized, but only after the impermissible seizure has been ongoing for 90 days. *Id*. ¶¶ 75, 79. This policy expressly contemplates that BPD will seize non-evidentiary property without any recourse to reasonableness.

Moreover, the Amended Complaint specifically alleges that BPD policy 703 improperly "requires BPD officers accompanying a victim to the hospital to 'take possession of the clothing of the victim and all available evidence.'" *Id.* ¶ 82 (quoting BPD Policy 703 at 4). These constitutional violations—authorized by Policies 703 and 1401—harmed Plaintiffs by, among other things, depriving them of the use of their property. *Id.* ¶¶ 111-12. *See Presley*, 464 F.3d at 487 (partial loss of use of property sufficient to sustain Fourth Amendment claim). Since these policies authorize BPD officers to search and seize property, evidentiary and non-evidentiary, without a warrant and without any reasonableness assessment, the policies are facially unconstitutional.

> **B.      Plaintiffs Need Not Exhaust State Law or Administrative Remedies Before Challenging BPD's Unconstitutional Custom, Practice, or Usage of Failing to Provide Crime Victims with Procedural Due Process Protections.**

Defendants baselessly assert that Plaintiffs' procedural due process claims fail because they are merely state law claims akin to conversion that "Plaintiffs' attempt to reframe…as constitutional violations." BPD MTD at 19. But Plaintiffs do not merely seek the return of lawfully seized property, as did plaintiffs in the cases on which Defendants rely. Here, facially unconstitutional policies *required* Officer Defendants to seize and search Plaintiffs' property—even non-evidentiary property—without any assessment of reasonableness and without providing due notice. The gravamen of these claims are an invasion of constitutionally protected privacy and possessory interests, not mere conversion.

BPD's unlawful searches and seizures of property and failure to provide adequate notice distinguish this case from *Mora v. City of Gaithersburg*, 519 F.3d 216 (4th Cir. 2008), and *City of West Covina v. Perkins*, 525 U.S. 234 (1999), the two cases Defendants cite to defeat Plaintiffs' procedural due process challenge. BPD MTD at 19-22. In *Mora*, the Fourth Circuit concluded that the owner of *lawfully* seized firearms who refused to participate in adequately-noticed state procedures for their return could not invoke due process. 519 F.3d at 230 (plaintiff objected to questions about his mental health and alcohol use). Unlike *Mora*, this case involves unambiguously unconstitutional searches and seizures of property—such as searching a cell phone's digital contents without legal basis—and a universal failure by Officer Defendants to provide *any* meaningful notice of property seizures. AC ¶¶ 100-79, 217-27. Although the gravamen in *Mora* was "basically one of conversion[ or] trespass to chattels," 519 F.3d at 231, the gravamen of the Amended Complaint is the Defendants' invasion of Plaintiffs' fundamental constitutional privacy and possessory rights. AC ¶¶ 1, 3, 33-37, 50-53, 57-59, 61-65, 74-87. Given these factual and legal differences, *Mora* is not instructive here.

Defendants' reliance on *City of West Covina v. Perkins* is equally misplaced. *Perkins* also weighed what notice was due to owners of *lawfully* seized property no longer needed by the police. 525 U.S. at 236 ("no one contests the right of the State to have seized the property in the first instance"). Contrary to the complete lack of written notice provided by the Officer Defendants in this case, the police in *Perkins* provided detailed written notice of the search, those executing and overseeing it, the property seized, and who to call for further information. *Id.* at 237 ("Individualized notice that the officers have taken the property is necessary"). When the *Perkins* plaintiff called the officer identified, he was advised to get a court order authorizing his property's release. *Id.* After a preliminary attempt to contact the court failed, plaintiff threw up his hands and sued. *Id.* But because the individualized, written notice plaintiff received satisfied "the obligation of the State to provide fair procedures to ensure return of the property," plaintiff could not simultaneously reject that process and assert a lack of due process. *Id.* at 241. Unlike in *Perkins*, Plaintiffs here made repeated attempts to regain their property through administrative avenues and

BPD repeatedly failed to provide appropriate process or relief, demonstrating BPD's custom, practice, or usage of denying procedural due process. AC ¶¶ 3, 14-16, 49, 53, 55-59, 64, 66-71, 87. Further distinguishing *Perkins*, Plaintiffs here allege *unlawful* seizure of property and unlawful searches of the property in addition to a complete failure to provide meaningful notice of any seizure or process for its return and Defendants' near-complete refusal to engage with Plaintiffs regarding the return of their property.

Defendants fail to reconcile the obvious factual and legal differences between this case and *Mora* and *Perkins.* Plaintiffs have not rejected adequately-noticed state and administrative remedies for the return of lawfully seized property. To the contrary, here it is the Defendants who have rejected any effort to resolve unlawful, unnoticed property seizures. *Mora* and *Perkins* are inapposite, and the Court should disregard their invocation by Defendants.

Moreover, even if Plaintiffs had adequate state remedies, Plaintiffs would still be entitled to seek federal relief under §1983. It is a foundational rule of §1983 litigation that plaintiffs seeking relief from constitutional violations committed under color of state law do not need to exhaust potential state remedies before seeking relief under § 1983. *Monroe v. Pape*, 365 U.S. 167, 183 (1961) ("[t]he federal [§ 1983] remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."); *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 516 (1982) ("conclud[ing] that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983."). Accordingly, Plaintiffs have properly sought relief from this court for BPD's procedural due process violations and the Court should deny BPD's motion to dismiss on these grounds.

**C.**    **Defendant Scott, BPD Commissioners, Deputy Commissioner Nadeau, and the Supervisory Defendants are Liable under *Monell* in their Official Capacities for the Officer Defendants' Unconstitutional Acts.**

Suing policymakers and supervisors in their official capacities under *Monell* is effectively a suit against the government,[7] and "a governmental entity is liable under § 1983 only when the entity itself is a 'moving force behind the deprivation; thus, in an official-capacity suit the entity's 'policy or custom must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. 159, 166, (1985) (citation omitted). Plaintiffs may sufficiently allege the existence of a municipal policy or custom in the form of (i) a formal regulation or policy statement, *Monell*, 436 U.S. at 690, (ii) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a custom or usage with the force of law, *City of St. Louis*, 485 U.S. at 127, (iii) the decisions of employees with final policymaking authority, *id*. at 123, (iv) the ratification by final policymakers of the decisions of subordinates to which authority was delegated subject to these policymakers' review and approval, *id*. at 124, and (v) a failure to adequately train or supervise employees if that failure results from deliberate indifference to the injuries that may be caused, *City of Canton*, 489 U.S. at 387.

Defendants argue that dismissal is appropriate because Plaintiffs (1) fail to state a claim for supervisory liability, BPD MTD at 28-29 and Offs.' MTD at 10-11, (2) fail to adequately allege a *Monell* claim for condonation, BPD MTD at 22-26, (3) fail to allege that Deputy Commissioner Nadeau is liable, BPD MTD at 29-31, and (4) are barred from suing Defendant Scott because he is not liable for any of BPD's acts or omissions, BPD MTD at 31-32. As explained below, BPD Commissioners are liable as the officials with final policymaking authority over Policies 703 and 1401, and BPD Commissioners, Deputy Commissioner Nadeau, and Mayor Scott are liable for

---

[7] Defendants also contend that Plaintiffs cannot sue the Officer Defendants or Supervisory Defendants in their official capacities. This is not true. For the same reasons stated in this section, suing a BPD member in her or his official capacity is a suit against the municipality, which is allowed. *Hafer v. Melo*, 502 U.S. 21, 31. (1991).

condoning BPD's unlawful policies, practices, or custom. Plaintiffs separately explain how they have adequately pleaded their distinct but overlapping claim for supervisory liability thereafter, *infra*, Section III.

> ### 1.    BPD Commissioners are officially liable because they had final supervisory authority to promulgate Policies 703 and 1401.

"Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Policies 703 and 1401 are issued by order of the BPD Commissioner, AC ¶¶ 74, 81, and they are unconstitutional. The analysis can end here because in this case, as in *Wellington v. Daniels*, the BPD Commissioner "is responsible for the choice and implementation of police department practices and procedures, his acts and omissions reflect government policy." 717 F.2d 932, 936 (4th Cir. 1983). *Wellington* holds that the "delegation of law enforcement policymaking authority to [a] police chief [is] assumed." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987).

In Baltimore, that delegation was explicit. Section 16-4 of the Code of Public Local Laws of Baltimore City states that "[t]he affairs and operations of the department shall be supervised and directed by a commissioner of police, who shall function as the chief police and executive officer of the department and be known as the Police Commissioner of Baltimore City."  Code of Public Laws of Balt. City, PLL §16-4. Section 16-7(8) specifically empowers BPD Commissioners "[t]o regulate attendance, conduct, training, discipline and procedure for all members of the Department and to make all other rules, regulations and orders as may be necessary for the good government of the Department and of its members."   *Id.* §16-7(8). BPD Commissioners promulgated and have final supervisory authority over Policies 703 and 1401. AC ¶¶ 74, 81. Because each of those policies is unconstitutional, the BPD Commissioners are officially liable.

## 2.    BPD, BPD Commissioners, and Deputy Commissioner Nadeau are subject to *Monell* condonation liability.

Plaintiffs have adequately pleaded that BPD, BPD Commissioners, and Deputy Commissioner Nadeau are subject to *Monell* condonation liability due to their knowledge of the violations of Plaintiffs' constitutional rights and their deliberate indifference to them.[8] A sufficiently pleaded condonation claim alleges that a supervisor or policymaker "(1) had actual or constructive knowledge of the [mis]conduct, and (2) failed to correct it due to their deliberate indifference." *Lucero v. Early*, No. CV GLR-13-1036, 2019 WL 4673448, at *9 (D. Md. Sept. 25, 2019), *appeal dismissed sub nom. Lucero v. Baltimore City Police Dep't*, No. 19-2072, 2020 WL 1520078 (4th Cir. Jan. 31, 2020).

A wealth of similar cases in this circuit reiterate this simple standard. In *Washington v. Baltimore Police Dep't*, the plaintiff's condonation claim survived a motion to dismiss by alleging only four instances of constitutional violations and simply stating "BPD is alleged to have 'failed to act to remedy' these wrongful acts." 457 F. Supp. 3d 520, 536 (D. Md. 2020) (Plaintiff supported his allegations "with a specific example from 1981, and three examples from 1988")"); *see also Smith v. Aita*, No. CCB–14–3487, 2016 WL 3693713 at *4 (D. Md. July 12, 2016) (it was "enough that Smith has alleged that Salisbury was aware of ongoing constitutional violations by Salisbury police officers and did nothing to stop or correct those actions, thereby allowing an unconstitutional pattern to develop"); *Johnson v. Holmes*, 204 F. Supp. 3d 880, 892 (W.D. Va. 2016) (allegation that "the County effectively sanctioned and endorsed [unconstitutional] treatment of the plaintiffs by failing to take any disciplinary or corrective action" sufficiently pleaded deliberate indifference).  Plaintiffs have met this straightforward standard.

---

[8] Condonation liability arises where defendants "ratify," "condone," or "acquiesce to" unconstitutional conduct. *See, e.g.*, *Blankenhorn v. City of Orange*, 485 F.3d 463, 486 (9th Cir. 2007) (Police chief "knowingly condoned and ratified actions by [officer] that he reasonably should have known would cause constitutional injuries"); *Richards v. Janis*, No. CV-06-3064-EFS, 2007 WL 3046252, at *7 (E.D. Wash. Oct. 17, 2007) ("Failure to conduct an internal investigation demonstrates the Department may condone or has ratified the officers' conduct") (citing, *inter alia*, *Spell.*, 824 F.2d at 1392).

This simple standard is paired with a low pleading threshold. In pleading a *Monell* condonation claim, Plaintiffs may simply "pair *general* averments of a policy or custom with particular examples." *Ulloa v. Prince George's Cty.*, No. CV DKC 15-0257, 2015 WL 7878956, at *6 (D. Md. Dec. 4, 2015) (emphasis added). To defeat a motion to dismiss, "[t]here is no requirement that [Plaintiffs] detail the facts underlying [their] claims, or that [they] plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 339 (4th Cir. 1994). Plaintiffs have more than satisfied the legal standard to defeat a motion to dismiss.

In challenging Plaintiffs' condonation claims, Defendants resort largely to inapposite cases decided under legal standards more demanding than the motion to dismiss standard. BPD MTD at 22-26; *see Connick v. Thompson*, 563 U.S. 51, 59 (2011) (judgment as a matter of law on failure to train claim); *Bd. of Cty. Comm'rs of Bryan Cty v. Brown*, 520 U.S. 397, 400 (1997) (reversing jury verdict on claim of singular failure to screen); *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 520 (4th Cir. 2000) (summary judgment); *City of Canton*, 489 U.S. 378 (judgment notwithstanding the verdict on failure to train claim); *Lytle v. Doyle*, 326 F.3d 463, 468 (4th Cir. 2003) (summary judgment); *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999) (summary judgment). Accordingly, the Court should not give weight to Defendants' inappositely cited authorities.

In the single case Defendants cite that considered a motion to dismiss a condonation claim, the Fourth Circuit explained that "[a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens*, 767 F.3d at 403; *see Jordan by Jordan*, 15 F.3d at 340 (4th Cir. 1994) (showing to survive a motion to dismiss a *Monell* claim is less than at "summary judgment stage or at trial, where the required showings are appreciably more demanding."). In *Owens*, the plaintiff plausibly alleged the BPD had condoned *Brady* violations through two factual allegations: (1) that "[r]eported and unreported cases from the period of time before and during the events complained of" showed a practice of knowingly

suppressing exculpatory evidence; and (2) that "a number of motions were filed and granted during [the relevant] time period," demonstrating the BPD's knowledge of the practice." *Owens*, 767 F.3d at 403-04; *accord Washington*, 457 F. Supp. 3d at 536. In *Owens*, the Fourth Circuit found that plaintiff's "brief, but non-conclusory" allegations "[t]hat BCPD officers withheld information on multiple occasions could establish a 'persistent and widespread' pattern of practice, the hallmark of an impermissible custom," leading to the denial of the motion to dismiss. *Id.*

Similarly, "post-event evidence of the lack of proper internal investigation …. and the failure [to] take strong disciplinary action against the officers involved" can "show what customs or policies were in effect [ ] before the date of the" violation. *Bordanaro v. McLeod*, 871 F.2d 1151, 1166 (1st Cir. 1989) (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir.1985) (a policymaker's subsequent acceptance of unconstitutional conduct "tends to prove his preexisting disposition and policy.").

Contrary to Defendants' assertions, the law favors the denial of Defendants' motion, because Plaintiffs have adequately pleaded that BPD Commissioners and Deputy Commissioner Nadeau had both actual and/or constructive knowledge of numerous constitutional violations and acted with deliberate indifference to them. First, Plaintiffs have alleged numerous unconstitutional searches and seizures occurring under the supervision and oversight of BPD Commissioners. AC ¶¶ 121, 134. The Amended Complaint alleges many reported and unreported instances where BPD conducted unreasonable searches, AC ¶¶ 3, 50, 53, 56-7, 61, conducted unreasonable seizures, AC ¶¶ 3, 33, 37, 49-50, 53, 56-57, 61, and failed to provide Plaintiffs with due process, AC ¶¶ 14-17, 51, 55, 58-59, 60-62, 65.

Second, Plaintiffs adequately pleaded that BPD Commissioners and Deputy Commissioner Nadeau had actual or constructive knowledge of these constitutional violations because Plaintiffs repeatedly reported them. AC ¶¶ 49, 53, 55-59, 64, 66-71, 87. Because the violations were widespread and reported to authorities, Plaintiffs adequately pleaded that BPD Commissioners and Defendant Nadeau had actual or constructive knowledge that they were occurring.

Third, Plaintiffs have adequately pleaded that despite BPD Commissioners' and Deputy Commissioner Nadeau's knowledge of these constitutional violations, they failed to correct them due to their deliberate indifference. By the end of 2019 Ms. Carter had notified Defendant Scott and the ECU, among others, and had even gone so far as to file complaints with the PIB—which Defendant Nadeau leads. AC ¶ 70. Deliberately indifferent to all of these reports, BPD failed to take remedial action and Ms. Spencer's property was unreasonably searched and seized in March of 2020. AC ¶¶ 56-59. Moreover, BPD, BPD Commissioners, and Deputy Commissioner Nadeau have still failed to return Plaintiffs' property. *Id.* ¶¶ 3, 14-16.

The continued failures of BPD, BPD Commissioners, and Deputy Commissioner Nadeau to correct these known violations is highly relevant. They knew that BPD had a custom or policy of violating crime victims' Fourth and Fourteen Amendment rights. They were deliberately indifferent to these known violations and consequently failed to adequately investigate and stop them. Plaintiffs have pleaded these facts and Defendants' motions to dismiss the condonation claims against BPD, BPD Commissioners, and Deputy Commissioner Nadeau should be denied.

> **3.     Mayor Scott is officially liable because, after having actual notice of BPD's ongoing unconstitutional conduct, he condoned that conduct by taking no action.**

Defendant Scott's failure to correct BPD's misconduct due to his deliberate indifference is a textbook example of *Spell* condonation liability. 824 F.2d at 1389. Ignoring this, Defendants urge dismissal by claiming that "Mayor Scott . . . cannot be held liable for . . . the alleged tortious conduct of BPD or its officers." BPD MTD at 32 (citing *Pembaur*, 475 U.S. at 479). But Plaintiffs do not sue Defendant Scott for the tortious conduct of BPD or its Officers. Plaintiffs sue Defendant Scott because he knew of the ongoing constitutional violations and failed to stop them. He is liable for his inaction that allowed the unconstitutional pattern to continue.

Pursuant to the *Monell* condonation theory of liability discussed in detail above, Plaintiffs' condonation claim against Defendant Scott is sufficiently pleaded because it alleges that Defendant Scott "(1) had actual or constructive knowledge of the [mis]conduct, and (2) failed to correct it due to their deliberate indifference." *Lucero*, 2019 WL 4673448, at *9.

Defendant Scott was on actual notice of BPD's persistent and widespread violations of crime victims' Fourth and Fourteenth Amendment rights as early as December 31, 2019, when Plaintiff Carter put him on notice by email. AC ¶ 71. As Mayor, Defendant Scott was empowered to correct these constitutional violations.[9] *Id.* ¶¶ 23, 72, 223, 237. The Baltimore Code of Public Local Laws provides that "[t]he Police Commissioner is subject to removal at the pleasure of the Mayor, as provided in § 6(c) of Article IV of the Charter of Baltimore City." Code of Public Laws of Balt. City, PLL § 16–5(e); *see Mayor & City Council of Balt. v. Clark*, 404 Md. 13, 16 (2008) (analyzing previous version of the same law). And the Charter of Baltimore City provides, in pertinent part, that "[t]he Mayor shall have the power to remove at pleasure all municipal officers." Balt. City Charter, Art. IV, § 6(c). Defendant Scott, in this way, had the power and responsibility to engage BPD, through its commissioners, about the unconstitutional searches and seizures that BPD conducted. Indeed, his authority included terminating the commissioners' employment. Because Defendant Scott did not engage any commissioner at all concerning BPD's practices in this case, he condoned those unconstitutional practices. AC ¶¶ 71, 72, 89, 224, 239. This inaction proximately caused these violations to continue. AC ¶¶ 225, 226, 240, 241.

---

[9] Defendant Scott also was empowered, but failed, to act to stop these violations before he became Mayor. Before becoming Mayor, he was the President of the City Council of Baltimore. That Council is empowered to "investigate complaints or allegations of faulty operations, inefficiency, or malfunctioning in any of [the several] departments, bureaus, commissions, boards, and agencies [of the Mayor and City Council of Baltimore]." Baltimore City Code, Article I, § 1-4(c)(2). He did no such thing. AC ¶¶ 71, 72, 89, 224, 239. It also deserves notice that, contrary to Defendants' assertions of Defendant Scott's complete impotence with regard to the BPD, the City Code consistently defines the Baltimore City Police Department as an agency of Baltimore City. *See, e.g.*, Baltimore City Code Article I, §§ 5-1(b)(2)(iii), 7-10(a)(2), 8-1(c), 9-1(b), and 10-1(b). BPD Commissioners participate directly in the City Council's work as an instrument of City government. *See, e.g.*, *id.*, Article I, §§ 55-4(c)(8), 14-3(c), 21, 40-2, 41-1(c), and 51-2(b)(2)(ii). Courts, too, have held that "the BPD is too interconnected with the government of the City so as to constitute a State agency," *Burley v. Baltimore Police Dep't*, 422 F. Supp. 3d 986, 1025 (D. Md. 2019) (cleaned up), and have stated that "the City shares a close relationship with the BPD," *Estate of Bryant v. Baltimore Police Dep't*, No. CV ELH-19-384, 2020 WL 673571, at *30 (D. Md. Feb. 10, 2020) (citing *Alderman v. Baltimore City Police Department*, 952 F. Supp. 256, 258 (D. Md. 1997)).

Defendants misread Plaintiffs' complaint. They incorrectly argue, BPD MTD at 32, that Plaintiffs seek to hold Defendant Scott liable for the "acts, activity[,] and inaction of the Police Department, over which [he] has no power." *Clark*, 404 Md. at 26. From this misreading, Defendants conclude that the general proposition controls, which is "because Mayor Scott has no control over BPD, he cannot be held liable for any of the alleged tortious conduct of BPD or its officers in this case." BPD MTD at 32 (citing *Pembaur*, 475 U.S. at 479). But this conclusion follows only because Defendants either understate the scope of *Monell* liability or overstate the scope of Plaintiffs' claims. Plaintiffs do not sue Defendant Scott because he affirmatively controlled either BPD's unlawful searches and seizures or BPD's failure to provide notice and an opportunity to be heard. Plaintiffs sue Defendant Scott because his knowing indifference and inaction permitted these violations to continue. This is precisely what a condonation theory of liability targets.

Defendants' reliance on *Pembaur* to defeat Defendant Scott's liability is misplaced. BPD MTD at 32. In *Pembaur*, the Court clarified that *Monell* exempts municipal actors from *respondeat superior* liability. 475 U.S. at 478-79. Thus, "municipal liability is limited to action for which the municipality is actually responsible. *Monell* reasoned that recovery from a municipality is limited to acts that are, properly speaking, acts 'of the municipality'—that is, acts which the municipality has officially sanctioned or ordered." *Id.* at 479–80. Defendant Scott is liable here not on a *respondeat superior* theory but because he knew of BPD's misconduct and officially sanctioned it by his deliberate indifference and his failure to act.

Defendant Scott had actual notice of BPD's ongoing unconstitutional conduct. He was empowered to act to stop or correct that conduct. He did neither. Now, he is liable for his indifference and inaction. Defendants' motion to dismiss the Tenth and Eleventh Causes of Action of the Amended Complaint should be denied.

**D.     The Supervisory Defendants' Failure to Provide Adequate Supervision or Training Caused Plaintiffs' Injuries.**

Pursuant to *Monell* and its progeny, a municipality is liable when its supervisors fail to train or supervise police officers when those failures are the "moving force" for constitutional violations. *Monell*, 436 U.S. at 694; *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981); *see Wellington*, 717 F.2d at 936 ("failure to supervise gives rise to § 1983 liability . . . where there is a history of wide-spread abuse"). Consequently, a municipality's failure to train or supervise its employees is "properly thought of as a city 'policy or custom' that is actionable under § 1983" if that failure "in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton*, 489 U.S. at 388–89. This is what Plaintiffs have pleaded, so their claims survive.

Though some courts articulate failure to train and failure to supervise claims in slightly different terms, the elements of each are the same: (1) authority or responsibility to train or supervise, (2) a failure to train or supervise—resulting from deliberate indifference—in the face of widespread or known constitutional violations, and (3) a causal link between the failures to train or supervise and Plaintiffs' constitutional injuries. *Compare, e.g.*, *Jones v. Jordan*, No. CV GLR-16-2662, 2017 WL 4122795, at *6 (D. Md. Sept. 18, 2017),[10] *with Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014).[11]  Plaintiffs' claims must survive because they have adequately pleaded each of these three elements. Defendants' arguments that Plaintiffs have failed to state a *Monell* claim for failure to train, BPD MTD at 26-27, and failed to state a claim for supervisory liability, BPD MTD at 28-29 and Offs.' MTD at 10-11, must therefore fail.

---

[10] Failure to train: (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training.

[11] Failure to supervise: (1) supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

1.     **Plaintiffs have adequately pleaded that Supervisory Defendants were responsible for Officer Defendants' training program and supervision.**

Plaintiffs have alleged that the Supervisory Defendants were responsible for training and supervising their subordinate officers. AC ¶¶ 32, 83, 88-92, 151-58, 163, 166-73, 178-79, 197-201, 203-04, 209-13, 215-16. At the motion to dismiss stage, this is enough. Indeed, merely alleging that the Supervisory Defendants each held the rank of Sergeant or above is sufficient. In BPD, officers holding the rank of Sergeant or higher bear supervisory responsibilities. This is well established as a matter of policy and Defendants cannot (and do not meaningfully) dispute it.[12] Consequently, Defendants' argument that "Plaintiffs allege a failure to supervise searches and seizures but … do not allege the 'Supervisory Defendants' had responsibility for doing so," Offs.' MTD at 4, is hollow.

Further undermining Defendants' insistence that Plaintiffs must plead the specific job duties of every supervisor at the motion to dismiss stage are the numerous cases routinely holding that Sergeants and Lieutenants are supervisors. *See Lankford v. Gelston*, 364 F.2d 197, 199 (4th Cir. 1966) (equating "supervising officers" with "a sergeant or lieutenant"); *Shockley v. City of Newport News*, 997 F.2d 18, 27 (4th Cir. 1993) (Police Sergeants' primary duty is management in context of FLSA claim); *Auer v. Robbins*, 65 F.3d 702, 712 (8th Cir. 1995), *aff'd*, 519 U.S. 452 (1997) (Police Sergeants' duties primarily managerial); *Kessler v. Howard Cty.*, 972 F.2d 340 (4th Cir. 1992) (under FLSA analysis, Police Sergeants are supervisors supervised in turn by Lieutenants); *Anderson v. City of Cleveland*, 90 F. Supp. 2d 906, 921 (E.D. Tenn. 2000) (Police Lieutenants were "executives" under the FLSA because their primary duty was supervision).

Plaintiffs' allegations of training deficiencies also are sufficient to sustain their claim that the Supervisory Defendants are liable for their failures to train. Plaintiffs here have alleged specific

---

[12] For example, BPD Policy 1708, "Sworn Performance Evaluations," clearly establishes that Sergeants and Lieutenants are supervisors. Appendix B to that Policy is an annual evaluation form for Sergeants and Lieutenants. That form includes five discreet areas on which every BPD Sergeant and Lieutenant is evaluated on "Supervision Skills." But the Court need not—and ought not—consider these facts at this time because Plaintiffs' allegations are sufficient.

examples of plainly unconstitutional conduct, and that the BPD's training program failed to train officers on their obligation to ensure that their searches and seizures were reasonable and their notice to the crime victims whose property they seized satisfied due process. AC ¶¶ 88-93, 150-164, 193-204. In this respect, this case is similar to *Estate of Bryant v. Baltimore Police Dep't*, where the plaintiff stated a plausible failure to train claim against the BPD by (1) identifying "a specific deficiency with BPD's training: its failure to train officers on the obligation to disclose exculpatory information and to otherwise comply with their obligations under *Brady*" and (2) illustrating "this training defect, [by] highlighting eight instances" of individual violations. 2020 WL 673571, at *39. (D. Md. Feb. 10, 2020). The *Bryant* Court held that '[t]hese factual allegations regarding the BPD's liability go well beyond a generic restatement of the elements of a *Monell* claim and are sufficient to provide the BPD with fair notice of the grounds for which has been sued." *Id.*; *see also Jones*, 2017 WL 4122795 (allegations sufficient that alleged lack of proper training on 'use of force, de-escalation, stops, searches, and arrests, and how to supervise and investigate misconduct).

The same is true here, but Plaintiffs did not stop there. Plaintiffs also have cited to specific training materials when naming the deficiencies in this case:

> [T]raining materials provided to BPD active duty members in 2020 in connection with the "Stops, Searches, and Arrests/Fair & Impartial Police Training Curriculum," which includes a lesson plan and presentation on how to manage a crime scene, makes no reference to BPD Policy 703 or 1401. *See* https://www.baltimorepolice.org/stops-searches-and-arrestsfair-impartial-policing-training-curriculum (PDF available at: https://tinyurl.com/ypw7nuk4).

AC ¶ 99. Plaintiffs have therefore sufficiently pleaded that Supervisory Defendants bore responsibility to supervise and train Officer Defendants and that the training program was deficient.

### 2. Plaintiffs have adequately alleged that Supervisory Defendants' failure to train or supervise resulted from their deliberate indifference to Officer Defendants' known or widespread constitutional violations.

For the same reasons Plaintiffs adequately have pleaded the deliberate indifference of BPD Commissioners, Deputy Commissioner Nadeau, and Defendant Scott in Sections II. C. 2. and II.

C. 3., above, they have adequately pleaded the deliberate indifference of Supervisory Defendants. Supervisory Defendants were on constructive notice of the constitutional violations here because they were so prevalent and widespread. AC ¶¶ 3, 50, 53, 56-57, 61 (unreasonable searches); AC ¶¶ 3, 33, 37, 49-50, 53, 56-57, 61 (unreasonable seizures); AC ¶¶ 14-17, 51, 55, 58-9, 60-62, 65 (due process violations). And Supervisory Defendants were on actual notice of these violations no later than the end of 2019, when Ms. Carter notified them. AC ¶ 70. Nonetheless, the violations continued: for example, Ms. Spencer's property was unreasonably searched and seized in March of 2020. AC ¶¶ 56-59. As Plaintiffs have illustrated here, "[d]eliberate indifference is shown if the need for more or different training is so obvious, and the inadequacy in training is so likely to result in the violation of constitutional rights." *Washington*, 457 F. Supp. 3d at 533.

### 3. Plaintiffs have adequately pleaded that Supervisory Defendants' failure to train or supervise caused Plaintiffs' constitutional injuries.

Plaintiffs have adequately alleged that Supervisory Defendants' failures to train and supervise caused the constitutional injuries. To succeed on a claim for failure to train or failure to supervise, Plaintiffs need only show an affirmative link to their particular constitutional violation. *Spell*, 824 F.2d at 1391. "This causal link is satisfied 'if occurrence of the specific violation [alleged] was made reasonably probable by permitted continuation of the custom,' such that the specific violation was 'almost bound to happen, sooner or later, rather than merely likely to happen in the long run.'" *Washington*, 457 F. Supp. 3d at 535 (alteration in original) (quoting *Spell*, 824 F.2d at 1391).

Here—as in *Washington*, where the Court found a "close fit" causally between the government's *Brady* violations and the plaintiff's wrongful conviction, *id.* at 535—failures to supervise and train officers in the proper conduct of searches and seizures and the provision of procedural due process fits closely with unreasonable searches and seizures and inadequate notice. And again here—as in *Washington*—Plaintiffs' have alleged "specific examples of "inadequate training and supervision "contemporaneous with the time of" the unconstitutional searches and seizures in this case that "make it plausible that the BPD's failure to address its training deficiency

made Plaintiff[s'] alleged [constitutional] violation[s] 'reasonably probable.".'" *Id.* (citing *Jones*, 2017 WL 4122795, at *9 (finding a "close fit" between an alleged deficiency in the BPD's training on the use of force, de-escalation, stops, and arrests, and the officer's alleged unlawful seizure of, and use of force on, the plaintiff). Plaintiffs have thoroughly described those allegations above. Section II. D. 2. Thus, the Supervisory Defendants' motion to dismiss the failure to supervise and failure to train *Monell* claims must be denied.

### III.   BPD COMMISSIONERS AND SUPERVISORY DEFENDANTS ARE INDIVIDUALLY LIABLE.

Contrary to their motion to dismiss assertions, BPD Commissioners and the Supervisory Defendants are also individually liable by virtue of their roles as supervisors and policymakers of the unconstitutional conduct that Plaintiffs allege. As a preliminary matter, the actions and omissions that make BPD Commissioners and Supervisory Defendants liable in their official capacities under *Monell* overlap significantly with those that make them individually liable as supervisors and policymakers. But because individual-capacity supervisor and policymaker liability is distinct from *Monell* official-capacity supervisor liability, it is discussed here separately.

In general, an adequate individual-capacity supervisory or policymaker liability claim alleges that policymakers and/or supervisors "under color of any statute, ordinance, regulation, custom, or usage . . . cause[d] to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A supervisor may be held liable when the plaintiff alleges:

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins*, 751 F.3d at 226.

The Fourth Circuit has "noted that liability ultimately is determined 'by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked'" and "that this issue is ordinarily one of fact, not law." *Shaw v. Stroud*, 13 F.3d 791, 798–99 (4th Cir. 1994). Plaintiffs have pinpointed BPD Commissioners and Supervisory Defendants here, and these claims should survive.

> ### A.   BPD Commissioners and Supervisory Defendants Had Actual or Constructive Knowledge that the Officer Defendants Were Engaged in Conduct that Risked Constitutional Injury to Citizens Like the Plaintiffs.

As a threshold issue, defendants must have knowledge—either constructive or actual—of the unconstitutional conduct in order to be subject to liability in their supervisory roles. Plaintiffs have adequately alleged that these Defendants had such knowledge. *Wilkins*, 751 F.3d at 226. "[E]stablishing a pervasive and unreasonable risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Id.* at 226–27 (cleaned up).) (quoting *Shaw*, 13 F.3d at 799). Here, Plaintiffs have alleged several occasions where BPD conducted unreasonable searches, AC ¶¶ 3, 50, 53, 56-57, 61, unreasonable seizures, *id.* ¶¶ 3, 33, 37, 49-50, 53, 56-57, 61, and failed to provide due process to Plaintiffs, whose property BPD seized, *id.* ¶¶ 14-17, 51, 55, 58-59, 60-62, 65. In addition to the widespread and numerous violations that gave BPD Commissioners and Supervisory Defendants constructive knowledge, Plaintiffs also provided them with actual notice of these violations more than once. *Id.* ¶¶ 49, 53, 55-59, 64, 66-71. Because the violations were widespread and defendants received actual notice, Plaintiffs adequately pleaded that BPD Commissioners and Supervisory Defendants had actual or constructive notice that they were occurring.

> ### B.   BPD Commissioners and Supervisory Defendants Were Deliberately Indifferent to or Tacitly Authorized the Officer Defendants' Offensive Practices.

After receiving notice of constitutional violations, supervisory defendants are subject to liability if they are indifferent to those violations—something that Plaintiffs adequately pleaded.

Plaintiffs "may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Wilkins*, 751 F.3d at 226–27 (quoting *Shaw*, 13 F.3d at 799). Here, Plaintiffs have catalogued a series of constitutional violations stretching from June 2018 to the present. Plaintiffs described how the Supervisory Defendants and BPD Commissioners knew or should have known about these violations beginning at least as early as December 2019, AC ¶ 87, and did nothing to correct the violations, *id.* ¶¶ 91, 158, 173, 201, 213. At this stage of the pleadings, Plaintiffs are entitled to the inference that Defendants' inaction after being put on notice resulted from their deliberate indifference. *Id.*

### C.     BPD Commissioners' and Supervisory Defendants' Inaction is Causally Linked to the Constitutional Injuries Plaintiffs Suffered.

Besides having established both that BPD Commissioners and Supervisory Defendants were on notice of the constitutional violations that Plaintiffs suffered and were deliberately indifferent to these violations, Plaintiffs have also adequately pleaded that their injuries were caused by the violations. In supervisory liability claims, allegations "of causation may be direct where the policy commands the injury of which the plaintiff complains or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions." *Wilkins*, 751 F.3d at 226–27 (cleaned up) (quoting *Shaw*, 13 F.3d at 799). Plaintiffs have alleged both that BPD Commissioners are directly liable for commanding the injuries described in their complaint and that BPD Commissioners and Supervisory Defendants are liable because the persistent constitutional violations were the natural consequences of their actions.

Both Policy 703 and Policy 1401 are issued "By Order of the Police Commissioner."  AC ¶¶ 74, 81. BPD Commissioners are therefore directly liable for the constitutional violations each policy causes. Further, because Plaintiffs have adequately pleaded BPD Commissioners' and Supervisory Defendants' liability under traditional tort principles, the motions to dismiss must be denied. AC ¶¶ 89-91, 152-64, 167-79, 195-204, 207-16. Application of traditional tort principles demonstrates that BPD Commissioners and Supervisory Defendants caused BPD's and Officer Defendants' constitutional violations to continue. Thus, they are liable. There is little left to write

because "[a] supervisor's continued inaction in the face of documented widespread abuses [ ] provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates." *Shaw*, 13 F.3d at 799 (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir.1984)).

### IV.   OFFICER DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE A CRIME VICTIM'S RIGHT TO BE FREE FROM WARRANTLESS SEARCHES AND SEIZURES OF THEIR PERSONAL PROPERTY WITHOUT PROBABLE CAUSE IS WELL ESTABLISHED.

Officers, like Defendants here, who violate a clearly established constitutional right are not entitled to qualified immunity. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018); *Villarreal v. City of Laredo*, No. 20-40359, slip op. at 2 (5th Cir., Nov. 1, 2021) ("[A]s the Supreme Court has repeatedly held, public officials are not entitled to qualified immunity for obvious violations of the Constitution."). In delineating what qualifies as a clearly established right, the Supreme Court stated that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "the very action in question" need not have "previously been held unlawful." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also City of Tahlequah v. Bond*, No. 20-1668, 2021 WL 4822664 at *2-3 (U.S. Oct. 18, 2021) (faulting panel majority and respondent for failing to identify cases "under similar circumstances" and relying exclusively on cases with "dramatically different" facts).; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). Contrary to the arguments of Officer Defendants, Plaintiffs have adequately alleged that Officer Defendants violated their clearly established rights against unreasonable search and seizure.

### A.   Officer Defendants' Warrantless Cell Phone Searches Violated a Clearly Established Constitutional Right Protecting Digital Data.

Plaintiffs have adequately pleaded that Officer Defendants violated Plaintiffs' clearly established Fourth Amendment right against unreasonable searches. A search implicating the Fourth Amendment occurs when the government intrudes upon a person's reasonable expectation

of privacy. *Jacobsen*, 466 U.S. at 113. Fifty years ago, the Supreme Court recognized "the most basic constitutional rule" of Fourth Amendment searches is that they are "per se unreasonable" if conducted without a warrant, subject only to a few "jealously and carefully drawn" exceptions. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (quoting *Jones v. United States*, 357 U.S. 493, 499 (1958)). Given the "vast quantities of personal information" modern cell phones contain, the Supreme Court established in 2014 a "categorical rule[]" that officers require either a warrant or a case-specific exception to the warrant requirement to search one permissibly. *Riley v. California*, 573 U.S. 373, 386, 398 (2014) (reversing conviction where cell phone was searched incident to arrest because that exception applies only to tangible personal property, not digital data); *see also Carpenter v. United States*, 138 S. Ct. 2206, 2214 (2018) (reiterating "police officers must generally obtain a warrant before searching the contents of a [cell] phone" due to "the vast store of sensitive information" they hold). *Riley* prohibited warrantless cell phone searches incident to arrest despite an arrestee's "reduced privacy interest[] upon being taken into police custody." *Riley*, 573 U.S. at 391. It is thus "beyond debate," *Ashcroft*, 563 U.S. at 741, that searching the cell phone of a crime victim—with an unimpaired expectation of privacy—is also unconstitutional, absent a warrant, consent, or case-specific exception. *Camara v. Mun. Court of S.F.*, 387 U.S. 523, 530 (1967) (Fourth Amendment protects the law-abiding, not just those "suspected of criminal behavior").

The search of Plaintiff Faye Cottman's cell phone was blatantly unconstitutional. Five years after *Riley* and nearly a year after *Carpenter*, Defendant Macklin searched Ms. Cottman's cell phone without a warrant or case-specific exception. *See Texas v. Brown*, 460 U.S. 730, 735-36 (1983) (listing exceptions to warrant requirement, including exigent circumstances and consent). With Ms. Cottman's assailant apprehended at the crime scene (AC ¶ 49), no exigent circumstances justified the search.[13] Defendant Macklin had no warrant. AC ¶ 52. Ms. Cottman

---

[13] Exigent circumstances overcome the warrant requirement only where "the needs of law enforcement [are] so compelling that a warrantless search is objectively reasonable." *Missouri v. McNeely*, 569 U.S. 141, 148-49 (2013) (applying a "totality of the circumstances" test to

did not consent to the search. *Id.* Her expectation of privacy was undiminished. The unreasonable, warrantless cell phone search unquestionably violated her Fourth Amendment right to be free from unreasonable government searches.

Officer Defendants' unlawful cell phone searches without warrant or valid exception violated a categorical Fourth Amendment rule; thus, Officer Defendants are not entitled to qualified immunity.

> **B.    Officer Defendants' Warrantless, Blanket Seizures of Non-evidentiary Property Were Patently Unreasonable and Violated Plaintiffs' Clearly Established Rights.**

In addition to their Fourth Amendment right against unreasonable search, Plaintiffs' clearly established right against unreasonable seizure was violated by Officer Defendants. Unlike a search, which compromises a person's right to privacy, a Fourth Amendment seizure affects a "meaningful interference with an individual's possessory interests in [the person's] property." *Jacobsen*, 466 U.S. at 113. To protect this possessory interest, an officer may not seize property whose "probative value remain[s] uncertain," *Horton v. California,* 496 U.S. 128, 129 (1990), or when there exists no "probable cause to associate the property with criminal activity," *Texas v. Brown*, 460 U.S. at 738. An officer may only seize evidence or property with an "incriminating character," and then only with a warrant or within a recognized exception to the warrant requirement. *Zurcher v. Stanford Daily*, 436 U.S. 547, 554 (1978) (affirming third-party search for "fruits, instrumentalities, or evidence of a crime"). These rules have long recognized that "the community's vital interests in law enforcement" and "need for evidence," *Winston v. Lee*, 470 U.S. 753, 759 (1985), cannot justify "invad[ing] the owner's possessory interest" in non-evidentiary property, *Horton*, 496 U.S. at 134.

---

determine whether "a warrantless search is potentially reasonable because 'there is compelling need for official action and no time to secure a warrant.'" (quoting *Michigan v. Tyler*, 436 U.S. 499, 509 (1978))).

Furthermore, as discussed in Section II, *supra*, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment" when its "execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition." *Jacobsen*, 466 U.S. at 124. This specific prohibition is clearly established. A seizure may become unreasonable when its length unduly intrudes upon constitutionally protected interests. *Place*, 462 U.S. at 708-09 (90-minute seizure without probable cause of traveler's luggage for "canine sniff" was unreasonable; the violation was "exacerbated" by agents' failure to notify traveler where they were taking luggage or how they would return it); *Jacobsen*, 466 U.S. at 125 (destruction of trace amount of powder reasonable where police had probable cause to believe it was cocaine). Thus, it is well-established that the lengthy or permanent seizure of non-evidentiary property or minimally probative evidence violates Plaintiffs' Fourth Amendment possessory interests because there is no countervailing government interest in lengthy or permanent possession.

Here, Officer Defendants abdicated any responsibility for limiting their seizures to evidence or property with an "incriminating character." They seized victims' cell phones without any basis to believe they contained anything "incriminating." AC ¶¶ 50, 57, 61, 63. Indeed, Defendant Macklin retained Ms. Cottman's phone because "it was evidence" (AC ¶ 53) even after unlawfully searching it and finding no indicia of a relationship between Ms. Cottman and her assailant. *Id*. Officer Defendants seized hundreds of dollars in cash. *Id.* ¶¶ 57 ($400.00), 63 ($435.00). They seized automobile and other keys. *Id.* Lawfully present officers may seize property found in plain view "assuming there is probable cause to associate the property with criminal activity," *Texas v. Brown*, 460 U.S. at 738. Defendants cite only case law supporting this uncontested premise. Offs.' MTD at 9 (citing *United States v. Davis*, 690 F.3d 226 (4th Cir. 2012)). But here, the Fourth Amendment violations arise from the Officers indiscriminately seizing property with no nexus to criminal activity. Plaintiffs' personal property was not transformed wholesale into evidence merely because it was in their possession when they were assaulted. Officer Defendants' seizure of this personal property—property that was unconnected to the crimes committed against Plaintiffs—is unequivocally forbidden by Supreme Court precedent.

Even if some of the warrantless seizures were valid at their inception, something that Defendants have not and cannot establish, Officer Defendants' prolonged retention and destruction of Plaintiffs' seized property clearly violated Plaintiffs' Fourth Amendment rights. As the Supreme Court explained in *Riley*, cell phones are a pervasive and essential possession for the vast majority of Americans, 573 U.S. at 393-97, and depriving an owner of her non-evidentiary cell phone for years (AC ¶¶ 50, 57, 61) is a substantial interference in her possessory interest without concomitant governmental value. Likewise, cash has obvious and immediate value to its owners, but Defendants continue to deprive Plaintiff Amber Spencer of $400 for more than a year and a half. *Id.* ¶ 57. Defendants destroyed non-evidentiary property taken from Plaintiff Audrey Carter's deceased son despite her repeated pleas for its return because of its profound "sentimental value" (*id.* ¶ 65) and "near-constant communication" with police (*id.* ¶ 69). These prolonged seizures and destruction of property unreasonably infringed upon Plaintiffs' possessory interests, and no legitimate government interest exists to overcome this patent constitutional violation.

Officer Defendants' confiscation, retention, and destruction of non-evidentiary property from crime victims violated a long-standing Fourth Amendment rule; thus, Officer Defendants are not entitled to qualified immunity.

### C. Officer Defendants Violated the Fifth and Fourteenth Amendments by Failing to Provide Constitutionally Adequate Notice of Property Seizures.

Finally, and as discussed in Section II. B., above, due process has long required that law enforcement seizing property for a criminal investigation provide individualized notice to the property owner, which Plaintiffs have adequately alleged in this case. *Perkins*, 525 U.S. at 240-41 (notice of seizure adequate that provided, in writing, identities of law enforcement agency, executing officer, investigating officers, and magistrate, dates warrant was issued and executed, and an itemized inventory of property seized). Notice only satisfies due process when "it is in itself reasonably certain to inform those affected" by the deprivation of property. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950).

The Amended Complaint alleges that no Plaintiff received any meaningful notice of the seizure of their property.[14]  While "disoriented" (AC ¶ 50), "recovering" from surgery (AC ¶ 53), "shortly after" being shot "in the head and chest (AC ¶ 56-57), after being shot "seven times in the back, neck, and chest" (AC ¶ 60), and in the immediate aftermath of a child's death (AC ¶ 63-64), Plaintiffs' property was seized without adequate notice. At the time of the seizures, they received no inventory of property seized and no written notice of which agency or officer seized it. AC ¶¶ 51, 58, 62. At most, they were given verbal notice—while physically and emotionally vulnerable—that their unspecified property was taken as "evidence."  AC ¶ 53. This does not satisfy the individualized-notice requirement and violates due process.

Officer Defendants erroneously assert that "Plaintiffs acknowledge that the BPD has a procedure in place for the return of" seized property. Offs.' MTD at 9-10. Only a tortured interpretation of "procedure" could encompass the allegations that Officer Defendants universally failed to give property owners individualized notice (AC ¶¶ 51, 58, 62), they routinely refused to engage with property owners seeking the return of their property (*id.* ¶¶ 55, 59, 64-73), and permanently deprived Plaintiffs of their property without justification (*id.* ¶¶ 55, 57, 59, 62, 65). Officer Defendants' vague, oral notice to recent violent crime victims of the seizure of their property is hardly a "procedure" and does not satisfy due process. Because Officer Defendants' seizure of Plaintiffs' property without adequate notice is a violation of Plaintiffs' clearly established due process rights, Officer Defendants are not immune from the due process claims in this case.

Defendants unquestionably violated Plaintiffs' Fourth Amendment rights by seizing their personal property, searching their personal property, and maintaining possession of that property, all without legal justification. They compounded their Fourth Amendment violations by failing to provide due notice of the property deprivations as required by the Fifth and Fourteenth

---

[14] The Officer Defendants misleadingly characterize Plaintiffs as demanding "notice of state-law remedies." Offs.'  MTD. at 9-10.

Amendments. Because they violated these well-established constitutional norms, Officer Defendants are not entitled to qualified immunity.

## **CONCLUSION**

When Plaintiffs were at their most vulnerable, BPD members unreasonably searched and seized their personal property without consent, warrant, or other legal justification. BPD failed in their duty to apply the Fourth Amendment's reasonableness standard and seized all of Plaintiffs' personal property, including property with no evidentiary value. And BPD never provided Plaintiffs with adequate notice of these seizures and never meaningfully responded to Plaintiffs' requests that BPD return their property. On these facts, the law is clear. Officer Defendants are liable for their unreasonable searches and seizures. BPD and BPD Commissioners are liable for BPD's unconstitutional policies, customs, practices, and usages as well as for their failures to train and to supervise Officer Defendants. Supervisory Defendants are liable for their unconstitutional customs, practices, and usages as well as for their failure to train and to supervise their psubordinate officers. Defendant Brandon Scott is liable for condoning BPD's unconstitutional policies, customs, practices, or usages.

Defendants have no effective challenge to Plaintiffs' well-pleaded allegations. To distract the Court, they misstate the standard of review, improperly contest Plaintiffs' factual allegations, argue baselessly against pleadings in the alternative, overstate the pleading standards for policymaker and supervisory liability, and inappropriately invoke qualified immunity even though the officers here violated well established constitutional principles. These arguments are unavailing.

Defendants' motions must be denied.

41

Respectfully submitted,

Dated:  November 5, 2021

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW

By:  _____/s/_____
Tianna Mays (21597)
tmays@lawyerscommittee.org
Arthur Ago (*admitted pro hac vice*)
aago@lawyerscommittee.org

1500 K St. NW Suite 900
Washington, DC 20005
Tel (202) 662-8600
Fax. (202) 783-0857

*Attorneys for Class Plaintiffs*

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:  _____/s/_____
Anne C. Malik (*admitted pro hac vice*)
amalik@orrick.com
Nicole Lloret (*admitted pro hac vice*)
nlloret@orrick.com
Matthew Reeder (*admitted pro hac vice*)
mtreeder@orrick.com
Alison Epperson (*admitted pro hac vice*)
aepperson@orrick.com
Olamide Olusesi (*admitted pro hac vice*)
oolusesi@orrick.com

Columbia Center
1152 15th Street, N.W.
51 West 51st Street
Washington, DC 20005-1706
Tel. (202) 339-8400
Fax. (202) 339-8500

*Attorneys for Class Plaintiffs*