IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**FAYE COTTMAN**, *et al*.

        Plaintiffs,

    v.

**BALTIMORE POLICE DEPARTMENT**, *et al*.

        Defendants.

Civil Action No. 1:21-cv-00837-SAG

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO BIFURCATE *MONELL* CLAIM AND STAY DISCOVERY**

**I.    INTRODUCTION**

After their Rule 12(b)(6) motion to dismiss failed, the municipal defendants now try another tactic to avoid producing evidence that the BPD has engaged in systemic, Department-wide practices that violate the Constitution: they seek to bifurcate and stay Plaintiffs' *Monell* claims. But Defendants' appeal to convenience and procedure to avoid discovery on Plaintiffs' well-pleaded claims is premature at best and may be meritless. The Court can hardly weigh the relevant factors at this stage when there is no evidence to support arguments about potential prejudice or efficiency. A bifurcation request fits naturally at the close of discovery, following summary judgment motions. Only then can the Court properly evaluate whether two trials are necessary, and only then can the Court avoid inordinate delay by scheduling such trials back-to-back before the same jury.

Defendants' premature motion fails to demonstrate any factor warranting bifurcation. The motion fails to justify its central premise, that the Officer Defendants will win the first trial. The

1

motion fails to explain why—even if Officer Defendants win—a second trial would be unnecessary. The reason for this last failing is understandable since, in that world, everything doubles: depositions, document requests, summary judgment briefs, trials, and juries. If Officer Defendants are found liable in a first trial, then a new case will start from scratch many months from now. Needless to say, that process would not satisfy the interests that justify bifurcation. Nor is there any need to take such a risk. Defendants can renew their motion to bifurcate *after* summary judgment, which eliminates all risk of inordinate delay.

Defendants also overlook that these same concerns apply even if the Officer Defendants are not liable. Contrary to Defendants' argument, *Monell* claims can survive the individual claims' failure and would be likely to, based on the pleadings in this case. Bifurcating now is thus all risk and no reward. What's more, bifurcation threatens serious prejudice to Plaintiffs in the name of saving Defendants the effort of discovery. Defendants bear the burden of establishing that bifurcation is necessary, and they have not carried it.

Nor have Defendants carried their heavy burden of establishing that good cause exists to stay discovery. Indeed, Defendants never even acknowledge that they must make this separate showing. Staying discovery now would present all the same risks of turning one case into two for no legitimate payoff. Plaintiffs' claims survived a motion to dismiss and should proceed to discovery. Following summary judgment, Defendants can renew their motion to bifurcate, this time backed by actual evidence to support their request rather than speculation and conjecture. The current motion, however, is premature and should be denied.

**II.     BIFURCATION IS INAPPROPRIATE AT THIS EARLY STAGE IN THE PROCEEDINGS.**

Under Rule 42(b), the Court may order separate trials of any claims or issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "The

party requesting separate trials bears the burden of convincing the court that such an exercise of its discretion will (1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 975 (4th Cir. 2020) (citation omitted); *see also, e.g.*, *Noel v. Artson*, No. 06-CV-02069-WMN, 2006 WL 8427663, at *1 (D. Md. Nov. 1, 2006) (denying motion to bifurcate discovery and trial on *Monell* claim from excessive force claim). "Regardless of the latitude given to district courts in their decision to bifurcate trials, separate trials remains [*sic*] the exception, rather than the rule." *Noel*, 2006 WL 8427663, at *4 (citations omitted).

Defendants have not demonstrated that this case should be such an exception. Bifurcating the case before discovery threatens to impose significant delay, inconvenience, and to add substantial costs for the parties, the witnesses, and this Court. That is especially true—indeed, guaranteed—if Plaintiffs prevail on the individual claims. But it remains likely that Plaintiffs' *Monell* claims will survive a loss in the first trial, especially considering Defendants' answers to Plaintiffs' complaint. And Defendants simply cannot show any prejudice at this early stage before there has been any discovery. Instead, they rely on speculation and conjecture, which is inadequate to carry their burden. Finally, notwithstanding Defendants' examples from dissimilar cases, there is nothing routine about bifurcation, nor any general rule that bifurcation is appropriate when a municipality or police force is facing *Monell* claims.

The Court should deny the motion to bifurcate with leave to re-file after summary judgment, when the Court can evaluate such request on an actual record.[1]

---

[1] Plaintiffs believe that all pending claims likely can be resolved on summary judgment, if not sooner.

### A. Bifurcation Will Create Redundancies, Inefficiency, and Delay.

Defendants are wrong that bifurcating this case would serve judicial expediency and economy. Most obviously, Defendants do not address the potential harm Plaintiffs will suffer if their claims against the individual officers are successful following bifurcation. *See, e.g.*, Mem. of Law in Supp. of Defs.' Joint Mot. to Bifurcate *Monell* Claim and Stay Disc. at 6, Dkt. No. 69-1 ("Bifurcation Motion") (arguing that bifurcation would serve "judicial economy and pragmatic considerations … *should a plaintiff not prevail*" on the direct claims (emphasis added)). Indeed, Defendants' entire motion proceeds from the premise that the individual officers will prevail in a first trial. But Defendants provide no reason for the Court to accept that premise, and *Plaintiffs* have already prevailed against Defendants' attempt to dismiss their claims. If Plaintiffs do prevail in a first trial against the Officer Defendants, then bifurcation would prove onerous, imposing inordinate costs on the parties and this Court and adding unnecessary delay. Even setting that flaw aside, Defendants are wrong to presume that BPD cannot be liable unless a named officer is liable. Courts have recognized that in certain circumstances, *Monell* claims can survive even if claims against individual officers fail. This case presents such circumstances. Defendants' request thus may impose substantial costs on the parties and the Court with no payoff at all.

>    i) *Bifurcation would not promote judicial economy or convenience, especially if Plaintiffs win the first trial.*

Bifurcation will not "promote greater convenience to" anyone, nor will it be "conducive to expedition and economy." *McKiver*, 980 F.3d at 975. Bifurcating the proceedings now leads this case down one of two possible paths. Down the first, Plaintiffs prevail at summary judgment

or trial against the individual officers; down the second, Defendants prevail. Both paths lead to delay and inconvenience.[2]

The first path, which Defendants ignore without reason, will result in a finding of liability against the individual officers. Nothing has changed since Defendants lost their motion to dismiss, and Defendants identify no reason to presume that they will prevail in a first trial.[3] If they do not prevail, bifurcation will force the parties—after engaging in one round of discovery—to repeat the process, including depositions of the individual officers, plaintiffs, and representatives from BPD, followed by summary judgment briefing, and then trial. This approach would unnecessarily prolong the case, waste resources, burden the witnesses, and force the Court to adjudicate multiple rounds of briefing and to manage multiple trials. Nothing about this path justifies bifurcation, yet Defendants do not explain why this scenario will not play out. Without a record to support Defendants' premise that they will prevail in the first trial, the Court should not grant a motion to bifurcate in the interests of judicial economy. *See, e.g.*, *Retes v. Prince George's Cnty.*, No. 8:16-cv-02784-TDC, Mem. Order at 3, Dkt. No. 25 (D. Md. Dec. 13, 2017).[4]

---

[2] The likelihood of wasteful redundancy is owing in part to Defendants' flawed arguments, and, in part, to the overlapping nature of the evidence required to prove a case against the individual defendants and against the BPD. Where such overlap is so pronounced, as here, bifurcation is less warranted. *See Speechly Bircham LLP v. Miller*, No. 8:10-CV-03041-AW, 2012 WL 13012753, at *1 (D. Md. Feb. 8, 2012) (denying bifurcation because "the evidence on liability and damages should overlap substantially"); *Leite v. Severstal Sparrows Point, LLC*, No. CIV WDQ-09-1158, 2010 WL 5148423, at *2 (D. Md. Dec. 10, 2010) (finding benefits of bifurcation "wholly speculative" where evidence and witnesses on issues to be bifurcated overlap).

[3] In fact, Defendants assert that Plaintiffs' direct claims carry a *significantly less exacting* burden than the *Monell* claims. Bifurcation Motion at 9 (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)).

[4] A courtesy copy of *Retes* is included as Exhibit A.

Down the second path—where the Officer Defendants prevail—bifurcation does not offer Defendants' promised efficiency either. Defendants argue that "a plaintiff generally cannot pursue § 1983 *Monell* liability claims unless the plaintiff *first* prevails on the direct § 1983 individual claims against the Officer Defendants." Bifurcation Motion at 5. Key here is the word "generally." Notwithstanding the picture Defendants try to paint, a city (or other governmental entity) may be liable for failure to train even where no individual defendant is even sued. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Because Plaintiffs have alleged municipal liability for a failure to train, BPD will have to answer for such failure, even if the individual defendants do not. The Ninth Circuit, for instance, has held that a municipality may be liable even after an individual defendant is exonerated if a constitutional deprivation is "a consequence of [municipal] policy." *Fairley v. Luman*, 281 F.3d 913, 917 (9th Cir. 2002). And particularly where—as here—the individual officers raise a qualified immunity defense, "a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality." *Int'l Ground Transp., Inc. v. Mayor of Ocean City*, 475 F.3d 214, 219 (4th Cir. 2007).[5] A second trial is therefore likely here, even if no individual officer is found liable.

Setting that likelihood aside, another particularity of Defendants' pleadings increases the probability that BPD is liable even if the individual officers are not. Plaintiffs named each officer who seized their property and alleged that BPD is responsible for each unconstitutional seizure.

---

[5] This possibility is acute here. The Court noted in its Order on the Motion to Dismiss that "As this case progresses, the Officer Defendants are free to reraise their qualified immunity defense, and, if they do, this Court will reevaluate whether Plaintiffs have done enough to overcome it." Mem. Op. at 33, Dkt. No. 54.

FAC ¶¶ 14 (Gray), 15 (Spencer), 16 (Cottman), 17 (Carter).[6] BPD admits that Plaintiffs' allegations describe an illegal phone search and BPD's failure to timely return Plaintiffs' property. BPD Mem. of Law in Supp. of Mot. to Dismiss at 3, Dkt. No. 46-1. However, each named defendant denies having seized any property. *Compare* FAC ¶¶ 14-16, 50-53, 57-63, 135, *with* Def. Converse's Answer to FAC, Dkt. 61, ¶¶ 15, 57-59, 135 (Spencer), *and* Def. DiPasquale's Answer to FAC, Dkt. 62, ¶¶ 14, 60-62, 135 (Gray), *and* Def. Dressler's Answer to FAC, Dkt. 63, ¶¶ 63, 135 (Carter), *and* Def. Macklin's Answer to FAC, Dkt. 64, ¶¶ 16, 50-53, 135 (Cottman). This could be a disagreement about the word "seize," which discovery will reveal. But it could be that the individual officers—whose interests are not completely aligned with the Department's—will deny only that *they* are the individuals who seized the property. If Plaintiffs have mis-identified the officers who conducted the unconstitutional searches and seizures, then the named officers will not be liable, but BPD may still be liable for the *Monell* claims. Should the jury conclude that Plaintiffs' property was unconstitutionally seized, but that Plaintiffs did not prove that these particular officers were liable, then the *Monell* claims that BPD's failure to train and supervise its officers caused Plaintiffs' constitutional harms would remain very much alive. And "[g]iven that a finding of no liability on the part of the individual officers would not necessarily obviate the need for a second trial of claims against the [municipal] Defendants, any potential benefit of bifurcation is seriously diminished." *Hayat v. Fairley*, No. 08-cv-3029, 2010 WL 11549898, at *2 (D. Md. Apr. 21, 2010). Defendants' motion is thus all downside with virtually no upside for efficiency or judicial economy.

---

[6] Plaintiffs pled in this manner, and named the John/Jane Doe officers, in part because Plaintiffs suffered severe injuries that inhibited their ability to perceive their surroundings in the immediate aftermath of their victimization.

> ii) *Ordering two trials prejudices Plaintiffs' ability to pursue BPD for its systemic constitutional violations.*

Defendants have not tried to satisfy—and cannot satisfy—their burden of demonstrating that bifurcation will "not result in undue prejudice to any party." *McKiver*, 980 F.3d at 975. Bifurcating the claims now "imposes a significant barrier to [Plaintiffs'] ability to pursue a claim against [BPD] to vindicate systemic concerns by increasing the resources required to do so." *Retes*, Mem. Order at 4. For instance, Defendants would propose separating discovery into two rounds even though many of the witnesses will be the same. Under Defendants' proposal, Plaintiffs would depose each Officer Defendant about the circumstances that led to the various alleged unconstitutional seizures. Then, months (or more) later, following briefing and a trial, Plaintiffs would depose these same officers about their training and supervision. The same is true for interrogatories, production requests, and requests for admission. Defendants would have Plaintiffs submit one set of questions and requests now, wait weeks or months for responses (and litigate any disagreements), try their case, and then repeat the process. Plaintiffs would have to bear unnecessary costs and incur a substantial delay to have their claims heard, even though this Court has already ruled that they have stated cognizable claims backed by well-pleaded allegations. The Court should deny the motion for this reason too.

**B. The Court Should Decline Defendants' Invitation to Speculate About Potential Prejudice from As-Yet Unknown Trial Evidence.**

Defendants have not named *any* evidence that, if offered in a consolidated trial, will prejudice any Defendant. They cannot because the parties have not engaged in any discovery practice, so there is no evidence. Instead, Defendants make conclusory statements ("Plaintiffs will necessarily introduce highly prejudicial evidence," Bifurcation Motion at 7), speculate (officer liability "might unfairly influence" the municipal liability determination, *id*. at 8), and

8

cite "norms" ("abundant precedent" that bifurcation obviates prejudice, *id*.). These arguments fail to justify bifurcation in terms of the "particular facts and circumstances" of *this case*. *Noel*, 2006 WL 8427663, at *3 (citation omitted). Nor do they offer any reason why bifurcation is necessary *now* rather than after summary judgment.

Defendants' conclusory and speculative argument resembles Prince George's County's failed argument in *Retes v. Prince George's County*, No. 8:16-cv-02784-TDC (D. Md. Dec. 13, 2017). There, Defendants moved to bifurcate when discovery against the individual defendant was incomplete and before discovery against the municipality began. *Retes*, Mem. Order at 2. Judge Chuang reasoned that "[w]ith the universe of relevant evidence yet to be established, there is not yet a basis to conclude that evidence against the [municipality] would unduly prejudice [the individual defendant] or confuse the jury in a manner that could not be remedied by relevant jury instructions." *Id*. at 2-3. So too here. After all, courts "must assume that juries for the most part understand and faithfully follow instructions." *Connecticut v. Johnson*, 460 U.S. 73, 85 n.14 (1983).

Without considering actual, prejudicial evidence, this Court cannot meaningfully consider whether consolidation will unfairly prejudice any defendant's case. If, after discovery, Defendants can point to specific evidence that would be unfairly prejudicial, they can renew their motion and attempt to satisfy their burden with more than conjecture. *See, e.g.*, *Noel*, 2006 WL 8427663, at *3 ("Perhaps, after dispositive motions are presented and resolved, the particular facts in this action might lead the Court to conclude that bifurcation of the trial phase is warranted."). But at this early stage, Defendants offer no reason for the Court to assume prejudice based on non-existent evidence. For this reason, too, the Court should deny the bifurcation motion as premature.

### C. Bifurcation Is Not Routine, and BPD Has Not Met Its High Burden to Prove this Case Is the Exception.

Finally, to the extent Defendants hope to convince the Court that a rubber stamp bifurcation is appropriate here because *Monell* cases in this District are routinely bifurcated, Bifurcation Motion at 3-6, this Court should not take the bait. The impression Defendants try to create would surely surprise the Rules Committee, which made clear that "separation of issues for trial is not to be routinely ordered." Fed. R. Civ. P. 42 advisory committee's note to 1966 amendment; *see also Speechly*, 2012 WL 13012753, at *1 ("[A]lthough complex issues have justified bifurcation, separating issues for trial is not to be routinely ordered.") (citation omitted); *Leite*, 2010 WL 5148423, at *1-2. It would also flout the basic rule that "[e]ach case must be considered in light of its particular facts and circumstances." *Noel*, 2006 WL 8427663, at *3 (quoting *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991)). Other police departments' ability to demonstrate—on different claims, with different records, at different stages of the proceedings—that bifurcation was merited, does not lower Defendants' burden in this case, on this record, and at this early stage.

The impression Defendants hope to create is also wrong. Defendants have cited a dozen or so examples over the course of 30 years. Given how often police departments are sued for *Monell* claims, Defendants were bound to churn up favorable examples. But examples of courts denying motions to bifurcate abound as well. *See, e.g.*, *Noel*, 2006 WL 8427663, at *3; *Palma v. Montgomery Cnty.*, No. 8:21-cv-01090, 2022 WL 1092345, at *6 (D. Md. Apr. 12, 2022); *Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 463 (D. Md. 2020); *Hayat*, 2010 WL 11549898, at *2 (collecting cases, including from appellate courts finding that bifurcation was an abuse of discretion). And this argument ignores that Defendants are cherry-picking from a

friendly pool of cases—in many other cases, the Defendants (rightly) never request bifurcation, much less pre-discovery.

Defendants also studiously refuse to engage with the "particular facts and circumstances" of this case. *Noel*, 2006 WL 8427663, at *3. For instance, Defendants do not cite any cases granting a pre-discovery bifurcation of a class action complaint claim alleging Fourth and Fourteenth Amendment violations. Defendants primarily cite malicious prosecution and excessive force cases, which necessarily involve prejudicial evidence of officers' violent conduct. *See, e.g.*, *Dawson v. Prince George's Cnty.*, 896 F. Supp. 537, 540 (D. Md. 1995) (prejudicial effect of admitting evidence of "prior incidents of police brutality [and] the nature of such incidents" clearly outweighed probative value against individual officer defendants); *Marryshow*, 139 F.R.D. at 320 (proof of "ongoing complaints of police brutality against the black members of the county as a whole [and] increasing amounts of brutality against black individuals by the police officers since the initiation of a drug task force" was highly prejudicial to the individual defendants). The potential for prejudice is far more obvious in a case where officers are accused of beating or killing a Plaintiff than here, where they are accused of seizing personal effects. Each case carries its own nuance, and its own potential for prejudice, and that is why the burden rests on Defendants in each case to explain why their case is appropriate for bifurcation. Defendants here fail to do so, treating the matter instead as routine, and their motion should be denied for this failure too.

### III. NO GOOD CAUSE EXISTS TO STAY DISCOVERY.

After much bluster about bifurcation, BPD whispers its true goal at the end of its motion: a stay of discovery. After all, bifurcating the *trials* would have little tangible effect on the case now, before discovery, before summary judgment briefing, while settlement remains possible,

and with trial months away. Absent a stay request, there is little purpose in seeking bifurcation now. Defendants actually seek to avoid producing evidence of systemic unconstitutional patterns and practices, even though Plaintiffs are entitled to this information after adequately alleging such patterns and practices and surviving a motion to dismiss. Yet, Defendants do not even acknowledge the legal standard that justifies a stay, much less try to satisfy that standard. For many of the same reasons as explained above, a stay of discovery would both prejudice Plaintiffs and create substantial inefficiency for the Court. The motion should be denied.[7]

"A motion to stay discovery is tantamount to a request for a protective order prohibiting or limiting discovery pursuant to" Federal Rule of Civil Procedure 26(c). *Kron Med. Corp. v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988); *see also Wymes v. Lustbader*, No. 10-cv-1629, 2012 WL 1819836, at *3 (D. Md. May 16, 2012) (same); 10A John Kimpflen et al., *Federal Procedure, L.Ed.* § 26:334 (2012) (same). Under that rule, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" *only if* the moving party shows "good cause." Fed. R. Civ. P. 26(c)(1). "The party moving for a protective order bears the burden of establishing good cause." *Finkle v. Howard Cnty.*, No. 13-cv-3236, 2014 WL 6835628, at *1 (D. Md. Dec. 2, 2014) (Gallagher, J.), *aff'd*, 640 F. App'x 245 (4th Cir. 2016) (citation omitted). To determine whether the moving party has made that showing, "the Court must weigh the need for the information versus the harm in producing it." *Id.* (citation omitted). Although trial courts have discretion to determine the scope and necessity

---

[7] At the end of its motion, Defendants say that "the Court should stay discovery against BPD until the Plaintiff's [*sic*] claims against the Officer Defendants are resolved." Bifurcation Motion at 10. To be clear, BPD remains a defendant in Plaintiffs' individual § 1983 claims that allege Fourth Amendment violations separate and aside from any *Monell* claim. Thus, even if the Court does bifurcate the claims and stay discovery for those claims, BPD must still submit to discovery for Plaintiffs' individual claims.

of a protective order, the "good cause requirement creates a rather high hurdle for proponents," and "protective orders" therefore "should be sparingly used and cautiously granted." *Baron Fin. Corp. v. Natanzon*, 240 F.R.D. 200, 202 (D. Md. 2006) (citation omitted); *see also CX Reinsurance Co. v. City Homes, Inc.*, No. 17-cv-1476, 2018 WL 5080944, at *2 (D. Md. Oct. 18, 2018) (Gallagher, J.).

Because BPD has failed to even acknowledge the good cause standard it must satisfy, the Court should deny the motion to stay out of hand. Regardless, no good cause exists. There is no question that Plaintiffs "need … the information." *Finkle*, 2014 WL 6835628, at *1. Plaintiffs cannot pursue their well-pleaded claims without discovery. And Defendants' proposed stay would cause substantial harm to *all* parties—BPD and the individual officers included—should Plaintiffs prevail on their claims against the individual officers. As explained above, *supra* Section II.A., bifurcation, as Defendants propose, would mean two rounds of depositions, interrogatories, document requests, and summary judgment briefing. Even if the Court deems bifurcation necessary, discovery need not be stayed. Instead, discovery should proceed in the normal course. If, after the parties have gathered evidence, Defendants demonstrate that bifurcation is appropriate, the parties can then present their cases in consecutive trials before the same jury, avoiding the many costs and delays a stay will cause.

Defendants contend that "it is certain that the discovery in this case regarding the § 1983 *Monell* claim will be an enormous and lengthy task." Bifurcation Motion at 10. As an initial matter, this is simply the natural result that follows when a plaintiff can state a claim for relief, based on well-pleaded allegations, that a defendant has caused them harm. That Defendants would rather not engage in discovery is not "good cause" that would justify a protective order. Moreover, Defendants' argument is a textbook example of the sort of "stereotyped and

13

conclusory statements" that a party may not rely on to justify a stay of discovery. *Baron Fin. Corp.*, 240 F.R.D. at 202 (quoting Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2035 (1994)). Defendants have offered no "particular and specific demonstration of fact" to support their request, such as an affidavit or declaration explaining the actual burdens that plaintiffs' discovery requests would impose.[8] *Id.* Nor is a stay of discovery the appropriate tool to address that unexplained concern. If Defendants believe that Plaintiffs' requests are too broad or onerous, they can always bring a motion to narrow the scope of discovery. A full-blown stay of discovery into Plaintiffs' well-pleaded *Monell* claims, however, is too blunt a tool for that precise concern. *See, e.g.*, *Mendez v. City of Chicago*, No. 18-cv-5560, 2020 WL 1479081, at *5 (N.D. Ill. Mar. 26, 2020) (denying motion to stay discovery in part because concerns "regarding the scope" of any *Monell* claim "can be addressed best through motions for protective orders").

Because Defendants have not and cannot demonstrate that good cause exists to stay discovery, the Court should deny the motion.

---

[8] Such a claim would be ill-founded given that BPD has access to much of the relevant material that may be sought in discovery and can produce it with minimal burden. For example, the Consent Decree between the BPD and DOJ established a Monitoring Team, which published a Compliance Review & Outcome Assessment Regarding BPD Training ("Assessment"). Assessment available at https://wwwbpdmonitor.com/s/BPD-Training-Assessment-February-2022-nn2w.pdf. The Assessment concluded that BPD's Training Academy was small, understaffed, and underfunded. *Id.* at 20, 44. The Assessment also concluded that the "curricula on the supervisory review of stops, searches, and arrests" that BPD submitted to the Monitoring Team for review "suffered from several foundational deficiencies." *Id*. at 54-55. Plaintiffs do not understand how BPD would be overburdened by providing the same information in discovery that it already has submitted to the Monitoring Team. And it seems unlikely that BPD would be required to repeat effort. As the Monitoring Team observed, "the [BPD] Audits & Inspections function generates regular data and reports on BPD performance – including on… search and seizure." *Id.* at 19. And BPD's E&T function maintains a web-based dashboard that "provides a wealth of detailed information about current completion rates for in-progress and past trainings." *Id.* at 65.

Respectfully submitted,

Dated: May 2, 2022

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW

By: _____/s/_____
Tianna Mays (21597)
tmays@lawyerscommittee.org
Arthur Ago (*admitted pro hac vice*)
aago@lawyerscommittee.org

1500 K St. NW Suite 900
Washington, DC 20005
Tel (202) 662-8600
Fax. (202) 783-0857

*Attorneys for Class Plaintiffs*

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: _____/s/_____
Anne C. Malik (*admitted pro hac vice*)
amalik@orrick.com
Matthew Reeder (*admitted pro hac vice*)
mtreeder@orrick.com
Alison Epperson (*admitted pro hac vice*)
aepperson@orrick.com
Olamide Olusesi (*admitted pro hac vice*)
oolusesi@orrick.com

Columbia Center
1152 15th Street, N.W.
51 West 51st Street
Washington, DC 20005-1706
Tel. (202) 339-8400
Fax. (202) 339-8500

*Attorneys for Class Plaintiffs*