IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FAYE COTTMAN, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> BALTIMORE POLICE DEPARTMENT, *et al.*, <br><br> *Defendants.* | Case No.  SAG-21-00837 |

## DEFENDANTS' JOINT REPLY MEMORANDUM IN SUPPORT OF MOTION TO BIFURCATE AND STAY *MONELL* DISCOVERY

Plaintiffs misunderstand the rationale behind Defendants' Joint Motion to Bifurcate and Stay *Monell* discovery, and the rationale behind court opinions repeatedly[1] granting such motions. *See Johnson v. Balt. Police Dep't*, 500 F. Supp.3d 454, 460-61 (D. Md. 2020) (emphasis added) ("Judges in this district have ***repeatedly*** ruled that bifurcation 'is appropriate and often desirable' in cases involving both § 1983 claims against individual police officers and *Monell* claims.").

---

[1] *See also*, as cited in *Johnson*, 500 F. Supp.3d at 461, *Brown v. Bailey*, RDB-11-01901 2012 WL 2188338, at *4 (D. Md. Jun. 13, 2012); *Peprah v. Williams*, GLR-18-990, 2019 WL 224245, at *10 (D. Md. Jan. 15, 2019) ("This Court has repeatedly held that bifurcation is appropriate in cases involving § 1983 claims against individual defendants and municipalities."); accord *Peterson v. Prince George's Cty.*, PWG-16-1947, 2017 WL 2666109 at *4 (D. Md. June 21, 2017); *Humbert v. O'Malley*, WDQ-11-0440, 2012 WL 1066478, at *2 (D. Md. Mar. 27, 2012), rev'd on other grounds, 866 F.3d 546 (4th Cir. 2017); *James v. Frederick Cty. Pub. Schs.*, 441 F. Supp. 2d 755, 762 (D. Md. 2006); *Robertson v. Prince George's Cty.*, 215 F. Supp. 2d 664, 665 (D. Md. 2002); *Dawson v. Prince George's Cty.*, 896 F. Supp. 537, 539 (D. Md. 1995); *Marryshow v. Town of Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991).

Plaintiffs devote two pages of their memorandum to arguing that bifurcation is not "routine." ECF No. 70 at 10-11. In general, that is true, and Defendants do not argue that bifurcation is routine in all cases. However, bifurcation in the type of case currently before the Court (§ 1983 claims against individuals and municipalities) is commonplace, as evidenced by the mountain of case law above, and the court's remarks that it has "repeatedly" bifurcated such cases.

1

Plaintiffs argue that the Court must deny Defendants' motion because Defendants have not justified the motion's "central premise, that the Officer Defendants will win in the first trial." ECF No. 70 at 1.

This is wrong. As courts in this jurisdiction have recognized, the "central premise" of bifurcating and staying discovery on *Monell* claims is not whether the Officer Defendants will win at trial. Courts, quite obviously, do not make that determination at the motions stage. Rather, the "central premise" is that in *Monell* cases, a bifurcation and stay of discovery often saves time and resources, avoids prejudice, and "often facilitates a more streamlined discovery process." *Taylor v. State*, DKC-10-2167, 2010 WL 5247903 at *2 (D. Md. Dec. 16, 2010). Whether the Officer Defendants may "win" or "lose" at trial is immaterial to whether bifurcation should be granted and discovery stayed. If the Officer Defendants "win" (no constitutional violation), then the *Monell* claim is dead in the water. If the Officer Defendants "lose" and the City indemnifies the judgment in accordance with the Local Government Torts Act and the Memorandum of Understanding between the FOP and the BPD, there is no further relief to be had by way of the *Monell* claim. *See, e.g., Burgess v. Goldstein*, 997 F.3d 541, 563 (4th Cir. 2021) ("If, in light of our decision today, the City does in fact indemnify Goldstein and the judgment is satisfied, it may be that Burgess would have received all the relief to which he is entitled and, thus, the *Monell* claim would be moot."). Likewise, based on the pleadings in this case, and in light of this Court's dismissal with prejudice of Plaintiffs' facial challenge to the policies, if Plaintiffs prevail there would be no need for a trial on Plaintiffs' *Monell* claim or for *Monell* discovery to go forward.[2] ECF Nos. 54, 55.

---

[2] Even if the Officer Defendants were granted qualified immunity on summary judgment, there would be no need to "repeat" the discovery process, as explained, *infra*, page 3. Plaintiffs would need to take additional discovery (not repetitive discovery) on the *Monell* claim. Importantly, however, the parties would get to the qualified immunity issue and/or trial on the merits much quicker if *Monell* discovery were not part of the equation. It would be exceedingly

Thus resources will be spared and judicial economy served by bifurcating the trial and staying *Monell* discovery.

I. **Bifurcation and Stay of Discovery will Conserve Resources and Promote Judicial Economy.**

Plaintiffs argue that resources will not be conserved because, if they win the trial against the Officer Defendants, they will have to "repeat the [discovery] process." ECF No. 70 at 5. Yet, leaving aside the fact that there may be nothing left to litigate, Plaintiffs do not explain why or in what way discovery would need to be repeated. Discovery and trial on the *Monell* claim would be qualitatively different, and quantitatively far broader, than discovery and trial on the claims against the Officer Defendants. This is precisely why courts in this District have identified cases like this one as "good candidates" for bifurcation. *See, e.g., Washington v. Balt. Police Dep't*, SAG-19-2473, 2020 WL 6277276 at *2 (D. Md. Oct. 26, 2020) (granting bifurcation and stay of *Monell* discovery in a reversed conviction case because "[r]eserving the much broader discovery until a particular constitutional violation has been established could greatly assist in narrowing its scope, the length of time it will take to conduct, and the overall expediency of the case"); *Treadwell v. Salgado*, No. 19 C 3179, 2022 WL 267988 at *2 (N.D. Ill. Jan. 28, 2022) (citations omitted) ("Such motions and the inclination of many judges to grant them stems in large part from the recognition that, often, 'claims of municipal liability require an extensive amount of work on the part of plaintiff's attorneys and experts, and an extraordinary amount of money must be spent in order to prepare and prove them.'"). For example, Plaintiffs' claim against the Officer Defendants does not

---

rare for the qualified immunity issue to make it to a jury. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted) ("Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial."); *id*. at 232 (citation omitted) ("Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.").

require the production of training and materials and records from dozens (or more) non-Defendant officers, depositions of those officers, and the expert reports and depositions of police practice experts regarding training. *See Jones v. Chapman,* ELH-14-2627, 2015 WL 4509871 at *4 (D. Md. Jul. 24, 2015) ("[T]here is no reason to delve into matters relating to [the BPD's] policies and practice unless and until the officer Defendants are found to have violated the [plaintiffs'] constitutional rights.") (citing *Brown*, RDB-11-1901, 2012 WL 2188338, at *4) (alterations in original). If the Court bifurcated the trial and stayed discovery it would not be necessary to gather documents and depose members of BPD's decision-making chain, and to conduct discovery in an attempt to prove BPD's deliberate indifference to Plaintiffs' constitutional rights. *See. e.g., Owens v. Balt. City State's Attorneys' Office*, 767 F.3d 379, 402 (4th Cir. 2014) (stating that *Monell* liability may attach where policymakers fail "to put a stop to or correct a widespread pattern of unconstitutional conduct" as a matter of "deliberate indifference."). Plaintiffs state that the Officer Defendants and the Plaintiffs would have to be deposed twice, but do not articulate what testimony the Plaintiffs could possibly offer on BPD's practices, policies and customs; nor do Plaintiffs articulate any reason the Officer Defendants would have to be deposed twice. During discovery on the underlying alleged constitutional violations, the Officer Defendants could engage in discovery and provide deposition testimony regarding their own training, supervision, and understanding of any policies, subject to the rules of discovery. *See, e.g., Washington*, 2020 WL 627726 at *2 ("In light of the bifurcation, a stay of discovery relating to the *Monell* claims is also appropriate, although limited discovery into the policies and training directly related to the officers involved in Plaintiff's case is obviously permissible.").

Plaintiffs next argue that if the Officer Defendants win at trial, resources will not be conserved because the Officer Defendants may have qualified immunity, and because BPD could

be liable absent any violation of constitutional rights. ECF No. 70 at 6. Plaintiffs' argument is incorrect because it conflates a finding of a constitutional violation with a finding immunity for that constitutional violation. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In other words, an officer could violate the Constitution, but be immune from suit because the right was not clearly established at the time of the violation. *Id.* Although it is true that a *Monell* claim may proceed if officers are granted qualified immunity, a constitutional violation is still a precondition to *Monell* liability. *See, e.g., Marryshow v. Bladensburg*, 139 F.R.D. 318, 319 (D. Md. 1991) (allowing bifurcation in a § 1983 case because "to hold the inactive Defendants liable, Plaintiff must first establish at least one active Defendant violated his constitutional rights"); *Shields v. Prince George's County*, GJH-15-1736, 2016 WL 4581327 at * 4 (D. Md. Sept. 1, 2016) ("Notably, the reason courts frequently order bifurcation in § 1983 cases is that § 1983 cases do not permit vicarious liability under a respondeat superior theory; meaning that while the establishment of the actively involved officers' liability must precede a finding of liability of the non-active employer, it does not, without more, establish liability on the part of the employer.").

Plaintiffs next state that BPD "may be liable for failure to train even where no individual defendant is sued." ECF No. 70 at 6. Plaintiffs cite page 388 of *Canton v. Harris*, 489 U.S. 378 (1989) in ostensible support, but *Canton* does not hold anything like that at all.[3] *Canton* stands for the proposition that a municipality may be held liable under a failure to train *Monell* theory in

---

[3] In *Canton*, the Court recounted that the plaintiff filed suit against "the city of Canton and its officials." 489 U.S. at 381.

limited circumstances. *Id*. at 390-392. It does not suggest that there need not be an individual defendant or a violation of constitutional rights in the first instance. Defendants are aware of no case law in this Circuit that supports Plaintiffs' position, and maintain that the case law in this Reply and Defendants' original Motion states the opposite. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite besides the point."); *Johnson*, 500 F. Supp.3d 463 (emphasis added ) (citing *Young v. City of Mt. Ranier*, 238 F.3d 567, 579 (4th Cir. 2001) ("However, to prevail on his *Monell* claim plaintiff **still needs to prove that his constitutional rights were violated, regardless of whether the Officers are entitled to qualified immunity**."); *Peprah v. Williams*, GLR-18-990, 2019 WL 224245 at *10 (D. Md. Jan. 15, 2019) ("Bifurcation, therefore, preserves scarce judicial and party resources by avoiding expenses related to *Monell* claims until a plaintiff has established the existence of an underlying constitutional violation."); ECF No. 69-1, Memorandum of Law in Support of Joint Motion to Bifurcate and Stay, at 5 and cases cited therein.[4]

---

[4] Even the Ninth Circuit case cited by Plaintiffs is clear that a constitutional violation is a precondition to a *Monell* claim. *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002). There the court noted that the "jury exonerated the individual officers of using excessive force and arresting [plaintiff] without probable cause, but found the City liable for violating [plaintiff's] civil rights 'by reason of a policy, custom or practice of the Long Beach Police Department.'" *Id*. at 917. The Ninth Circuit analyzed the record and found that the plaintiff's Fourth and Fourteenth Amendment claims for arrest without probable cause and deprivation of liberty without due process were "suffered as a result of collective inaction of the police department." *Id.* There, officers held plaintiff for twelve days and failed to conduct a motor vehicles or finger print check, despite plaintiff's continued pleas of mistaken identity, and his differing weight, license number and the fact that it was known that he had a twin. *Id.* at 915. Even if it were permissible to file a *Monell* claim without naming an individual defendant, a constitutional violation still must be proved because a constitutional deprivation is the "touchstone of § 1983 liability." *Id.*

In footnote 7 of their Opposition, Plaintiffs argue "[t]o be clear, BPD remains a defendant in Plaintiffs' individual 1983 claims . . . separate and apart from any Monell claim." ECF No. 70 at 12, n.7. This is not possible. Municipalities are liable through *Monell*. There is no individual § 1983 liability for municipalities. *See Monell*. Plaintiffs state that "BPD must still submit to discovery for Plaintiffs' individual claims." *Id.* If this Court were to bifurcate the trials and stay *Monell* discovery, BPD would of course participate in fact discovery on Plaintiffs' claims against the Officer Defendants, which is distinct (and far less costly, arduous, and time-consuming) from *Monell* discovery.

Plaintiffs argue that bifurcation and stay of discovery is inappropriate because the Officer Defendants deny seizing any property and "[s]hould the jury conclude that Plaintiffs' property was unconstitutionally seized, but that Plaintiffs did not prove that these particular officers were liable, then the *Monell* claims . . . would remain very much alive." ECF No. 70 at 7. This argument is difficult to track, but assuming that Plaintiffs are positing that some other, currently unknown officers, are the ones who seized the property, Plaintiffs do not offer any reason why they would not amend their Complaint to name the officers who were responsible for seizing their property. Surely, the best way to resolve this issue would be to conduct discovery on the facts surrounding the alleged underlying constitutional violations. Plaintiffs cannot purposely sue the wrong individuals just because they want to present a *Monell* claim.

## II. *Bifurcation will prevent prejudice.*

Plaintiffs argue that bifurcation would prejudice them because they wish "to pursue BPD for its systemic constitutional violations." ECF No. 70 at 8. This is a non-starter. This Court has already dismissed with prejudice Plaintiffs' facial challenge to the policies. ECF Nos. 54, 55. Plaintiffs do not have a right to pursue a cause of action simply to make a point. *See, e.g., Treadwell*

*v. Salgado*, No. 19 C 3179, 2022 WL 267988 at *7 (N.D. Ill. Jan. 28, 2022) (granting motion to bifurcate and rejecting the plaintiff's argument that there are "important, non-monetary" reasons not to grant bifurcation and that litigating *Monell* claims could "encourage reform" and "expose the widespread systemic failures of the City"); *Parker v. Banner*, 479 F. Supp. 2d 827, 829 (N.D. Ill. 2007) ("If a constitutional violation occurred, then the City pays.... [T]hat is all *Owen* requires. The idea that the Supreme Court requires some extra incentive to deter cities from allowing their employees to violate rights is inconsistent with its policy of immunizing cities from punitive damages."). Likewise, in *Almaraz v. Harris*, 602 F. Supp. 2d 920 (N.D. Ill. 2008), in which the plaintiffs brought class allegations regarding DUI stops without probable cause, the Court granted bifurcation, stating that "any moral or psychic satisfaction that plaintiff may derive from also showing the City would be liable based on Monell is not even a form of relief, *see Petersen v. Gibson*, 372 F.3d 862, 865 (7th Cir.2004), let alone relief that plaintiff may continue to seek after all possible compensatory relief has been granted." *Almaraz*, 602 F. Supp. 2d at 922, 925.

It is also worth noting that, to the extent Plaintiffs believe there are "systemic constitutional violations" regarding searches and seizures, BPD is currently under a Consent Decree, wherein the constitutionality of searches and seizures by BPD members is being prioritized, and members of the community are invited to provide feedback throughout that process. *United States v. Balt. Police Dep't*, JKB-17-0099 (D. Md. Jan. 12, 2017), ECF Nos. 2-2,[5] 39.

---

[5] *E.g.*, *United States v. Balt. Police Dep't*, JKB-17-0099, ECF No. 2-2, Consent Decree:

> 67. BPD will provide all officers with training on Stops, Searches, and Arrests, including the requirements of this Agreement, of no fewer than 16 hours within one year of the Effective Date and at least 4 hours on an annual basis thereafter. Such training will be taught by a qualified legal instructor with significant experience in Fourth Amendment issues, and will address Fourth Amendment requirements and related law; BPD policies; and this Agreement's requirements regarding Investigatory Stops and Detentions, Searches and Seizures, and Arrests, including:

8

Although Plaintiffs include a footnote that the evidence against BPD and the Officer Defendants will have an "overlapping nature," they do not identify any areas of overlap present here that are not present in other cases where *Monell* discovery is stayed and the trials bifurcated. ECF No. 70 at 5, n.2.  In *Johnson v. Baltimore Police Dep't*, 500 F. Supp. 3d 454, 461 (D. Md. 2020), Judge Hollander determined that the particular facts of the case revealed that there would be an overlap in evidence, which weighed against bifurcation and stay of *Monell* discovery. There, the officer defendants were accused of violating *Brady*. *Id.*  The Court noted that the bad faith component of the *Brady* claim could be "inferred based on gross deviations from routine police conduct" and concluded that "evidence as to the *Brady* claim may implicate BPD policies and overlap with evidence pertinent to the *Monell* claim." *Id.* at 462 (citation omitted). The present case contains allegations of unconstitutional searches and seizures and there is no identified

---

a. The difference between various police contacts by the scope and level of police intrusion; between probable cause, reasonable articulable suspicion and mere speculation; and truly voluntary and consensual encounters;

b. The facts and circumstances that may be considered in initiating, conducting, terminating, and expanding an Investigatory Stop or Detention;

c. The level of permissible intrusion when conducting Searches, such as "Pat Downs" or "Frisks";

d. The nature and scope of Searches based on the level of permissible intrusion on an individual's privacy interests, including Searches conducted pursuant to probation or parole release provisions;

e. The nature and scope of Searches incident to an Arrest;

f. Procedures for executing Searches, including handling, recording, and taking custody of seized property or evidence;

g. The effect that differing approaches to Stops, Searches, and Arrests can have on community perceptions of police legitimacy and public safety.

overlap in the evidence. Here, unlike in *Johnson*, discovery on the *Monell* claim is not even arguably necessary to establish the claims against the Officer Defendants. *See id*. at 464.

Plaintiffs cite three additional cases denying bifurcation in support of their position.[6] Each case is factually different, and also may be considered an outlier in this District. In *Retes v. Prince George's County*, (D. Md. May 2, 2022), ECF No. 70-1, Plaintiffs' Exhibit A, Judge Chuang denied bifurcation. He noted that the decision whether to bifurcate is committed to the trial court's sound discretion. *Id*. at 2[7] (citing *Houseman v. U.S. Aviation Underwriters,* 171 F.3d 1117, 1121 (7th Cir. 1999)). Judge Chuang found that bifurcation was premature, due in part to the "serious" allegations against the officers (sexual assault of individuals arrested for prostitution. Of course, the allegations at issue in *Retes* are much different from the allegations at issue in the present case. And, one judge's exercise of discretion not to order bifurcation does not mean bifurcation should not be ordered here. Likewise, with respect to the requested stay of discovery, this Court has noted that "decisions about the appropriate timing and sequence of discovery lie within the discretion of the trial court." *Washington*, 2020 WL 6277276 at *1 (citing Fed. R. Civ. P. 26(d)(1) (allowing discovery rules, including those pertaining to scheduling, to be modified "by court order")). Judge Chuang's reasoning does not cast doubt on *Marryshow* or any of the cases that this Court (or others) have decided to bifurcate and stay *Monell* discovery for judicial management and resource conservation.

---

[6] On page 10 of their opposition, Plaintiffs again cite *Hayat*, 2010 WL 11549898 at *2 and represent that page 2 of the opinion is "collecting cases, including from appellate courts finding that bifurcation was an abuse of discretion." ECF No. 70 at 10. However, page 2 of the Hayat opinion does not contain a single case where an appellate court found that bifurcation was an abuse of discretion. The Hayat Court cites two New York district court cases denying bifurcation

[7] The pin cites correspond to the page numbers of the Memorandum Opinion, not those appearing in the ECF header.

In *Noel v. Arston*, 2006 WL 8427663, WMN-06-2069 (D. Md. Nov. 1, 2006), Judge Nickerson denied bifurcation where a woman was shot after pulling a legally registered gun on police who used paramilitary force ("flash bang" grenade, battering ram) to enter her home on a "routine drug warrant." *Id*. at *1. Plaintiffs alleged that the County did not develop adequate policies to limit paramilitary force to hostage situations and the like. *Id.* Judge Nickerson noted that a central issue in the case was "why paramilitary tactics were used to execute a routine drug warrant in the first place." *Id*. at 2. The Court also found that the officer defendants would not be prejudiced by trying the claims together because "[i]t is possible that evidence of a County policy of using tactics such as those used on the morning of January 21, 2005, to execute drug warrants would actually assist the individual Defendants in establishing their asserted defenses of qualified immunity, good faith, legal justification, and absence of malice." *Id.* Aside from the obvious factual differences, the reasoning of *Noel* does not hold because, in the present case, the Court has dismissed with prejudice the facial challenge to the policies governing the searches and seizures. ECF Nos. 54, 55.

In *Hayat v. Fairley*, WMN-08-3029, 2010 WL 11549898 (D. Md. April 21, 2010), Judge Nickerson denied bifurcation finding that the facts were different from *Marryshow* because the municipality was alleged to have "actively promoted a pattern and practice of racial profiling as part of their drug interdiction program [and that supervisors] intentionally paired a first year officer with an officer who would provide training which included the practice of racial profiling." *Id*. at *2. Therefore, there is likely to be "overlap" in the evidence which made bifurcation undesirable. *Id.* There is no such "active promotion" or overlap identified in this case, which is, at bottom, a garden variety unconstitutional search and seizure case.

11

The prejudice endemic to trying *Monell* claims with the underlying constitutional claims is analyzed in Defendants' Joint Motion, ECF No. 69-1, and Plaintiffs have not rebutted those arguments. Significant prejudice would accrue to those defendants if evidence of other officers' wrongful conduct in unrelated cases were to be admitted into evidence at the trial against them. *Washington*, 2020 WL 6277276 at *2 (citing *Marryshow*, 139 F.R.D. at 320). Thus, these issues of prejudice and considerations of judicial economy regarding a more focused discovery process outlined above weigh in favor of bifurcation for trial. Courts have "repeatedly" bifurcated *Monell* cases at this stage of the proceedings, and indeed the majority of cases in this District have not held that bifurcation must be delayed until such foreseeable and inevitable prejudices, delays, or squandering of judicial resources actually transpires. Indeed, such a practice would defeat the very purpose behind granting the bifurcation of claims in the first place.

## CONCLUSION

For the foregoing reasons, Defendant BPD, jointly with the Officer Defendants, respectfully requests that this Court grant their Joint Motion to Bifurcate and Stay Discovery on the *Monell* claim.

                                                    Respectfully submitted,

                                                    James L. Shea
                                                  BALTIMORE CITY SOLICITOR

                                                  _____/s/_____
                                                  Elisabeth S. Walden, Chief of Police Legal Affairs (28684)
                                                  Kara K. Lynch (29351)
                                                  Baltimore City Law Department
                                                  Office of Legal Affairs
                                                  100 N. Holliday Street, Room 101
                                                  Baltimore, Maryland 21202
                                                  Telephone: (410) 396-2496
                                                  Facsimile:   (410) 396-2126
                                                  E-mail: kara.lynch@baltimorepolice.org

*Attorneys for Defendant Baltimore Police Department*

_____/s/_____
*Christopher C. Jeffries (Federal Bar No. 28587)*
*(signed by Kara Lynch with permission of Christopher Jeffries)*
*Louis P. Malick (Federal Bar No. 11166)*
*Kramon & Graham, P.A.*
*One South Street, Suite 2600*
*Baltimore, Maryland 21202*
*Tel: (410) 752-6030*
*Fax: (410) 539-1269*
*cjeffries@kg-law.com*
*lmalick@kg-law.com*
*Attorneys for Officer Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of May, 2022, a copy of the foregoing Joint Reply Memorandum in Support of Motion to Bifurcate and Stay *Monell* Discovery was filed with the United States District Court for the District of Maryland and forwarded to all counsel of record via CM/ECF.

/s/_____
Kara K. Lynch (29351